# ILLINOIS *v.* VITALE

No. 78–1845.   Argued January 8, 1980—Decided June 19, 1980

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and BLACKMUN, POWELL, and REHNQUIST, JJ., joined. STEVENS, J., filed a dissenting opinion, in which BRENNAN, STEWART, and MARSHALL, JJ., joined, *post*, p. 421.

*James S. Veldman* argued the cause for petitioner. With him on the briefs were *William J. Scott,* Attorney General of Illinois, *Donald B. MacKay* and *Melbourne A. Noel, Jr.,* Assistant Attorneys General, *Bernard Carey,* and *Marcia B. Orr.*

*Lawrence G. Dirksen* argued the cause and filed a brief for respondent.

MR. JUSTICE WHITE delivered the opinion of the Court.

The question in this case is whether the Double Jeopardy Clause of the Fifth Amendment prohibits the State of Illinois (State) from prosecuting for involuntary manslaughter the driver of an automobile involved in a fatal accident, who previously has been convicted for failing to reduce speed to avoid the collision.

I

On November 24, 1974, an automobile driven by respondent John Vitale, a juvenile, struck two small children. One of the children died almost immediately; the other died the following day. A police officer at the scene of the accident issued a traffic citation charging Vitale with failing to reduce speed to avoid an accident in violation of § 11–601 (a) of the Illinois Vehicle Code. Ill. Rev. Stat., ch. 95½, § 11–601 (a) (1979). This statute provides in part that "[s]peed must be

decreased as may be necessary to avoid colliding with any person or vehicle on or entering the highway in compliance with legal requirements and the duty of all persons to use due care." [1]

On December 23, 1974, Vitale appeared in the Circuit Court of Cook County, Ill., and entered a plea of not guilty to the charge of failing to reduce speed. [2] After a trial without a jury, Vitale was convicted and sentenced to pay a fine of $15. [3]

On the following day, December 24, 1974, a petition for adjudication of wardship was filed in the juvenile division of

---

[1] Section 11–601 (a) of the Illinois Vehicle Code, Ill. Rev. Stat., ch. 95½, § 11–601 (a) (1979), provides:

"No vehicle may be driven upon any highway of this State at a speed which is greater than is reasonable and proper with regard to traffic conditions and the use of the highway, or endangers the safety of any person or property. The fact that the speed of a vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions. Speed must be decreased as may be necessary to avoid colliding with any person or vehicle on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

[2] With respect to the traffic offense, the record contains a copy of the complaint, which charged that respondent on "Wednesday, November 20, 1974, 12:29 p. m., did then and there operate a certain motor vehicle upon a public highway of this State, to wit 170th and Ingleside in Thornton, situated in Cook County, Illinois, and did then and there violate section 11–601 (a) of the Illinois Vehicle Code by failure to reduce speed to avoid an accident." (Record 66–67.) Notations on the back of the complaint indicate that Vitale pleaded not guilty, waived a jury trial, was found guilty, and fined.

[3] Failing to reduce speed to avoid an accident is punishable by no more than 30 days in jail or by a fine of no more than $500. Ill. Rev. Stat., ch. 95½, § 16–104 (a) (1975), and ch. 38, §§ 1005–9–1 and 1005–8–3 (1979).

the Circuit Court of Cook County, charging Vitale with two counts of involuntary manslaughter.[4] The petition, which was signed by the police officer who issued the traffic citation, alleged that Vitale "without lawful justification while recklessly driving a motor vehicle caused the death of" the two children killed in the November 20, 1974, accident. App. 2–4.

Vitale's counsel filed a motion to dismiss on the grounds, among others, that the manslaughter prosecution was "violative of statutory and/or constitutional double jeopardy," id., at 7, because of Vitale's previous conviction for failing to reduce speed to avoid the accident. The juvenile court found it unnecessary to reach a constitutional question because it held that the manslaughter prosecution was barred by Illinois statutes requiring, with certain nonpertinent exceptions, that all offenses based on the same conduct be prosecuted in a single prosecution. Ill. Rev. Stat., ch. 38, §§ 3–3 and 3–4 (b)(1) (1979).[5] The juvenile court dismissed the petition for

---

[4] At the time Vitale was prosecuted, § 9–3 of the Illinois Criminal Code, Ill. Rev. Stat., ch. 38, § 9–3 (1973), provided:

"(a) A person who kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly. (b) If the acts which cause the death consist of the driving of a motor vehicle, the person may be prosecuted for reckless homicide or if he is prosecuted for involuntary manslaughter, he may be found guilty of the included offense of reckless homicide."

[5] Section 3–3 of the Illinois Criminal Code, Ill. Rev. Stat., ch. 38, § 3–3 (1979), provides:

"(a) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. (b) If the several offenses are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution, except as provided in Subsection (c), if they are based on the same act. (c) When 2 or more offenses are charged as required by Subsec-

adjudication of wardship and the State appealed. The Appellate Court of Illinois, First District, *In re Vitale,* 44 Ill. App. 3d 1030, 358 N. E. 2d 1288 (1976), affirmed the holding that the manslaughter prosecution was barred by the state compulsory joinder statutes. Ill. Rev. Stat., ch. 38, §§ 3–3 and 3–4 (b)(1) (1979).

The Supreme Court of Illinois, with two justices dissenting, affirmed on other grounds. *In re Vitale,* 71 Ill. 2d 229, 375 N. E. 2d 87 (1978). The court did not reach the state statutory question for it found "a more compelling reason why respondent cannot be prosecuted for the offense of involuntary manslaughter": the Double Jeopardy Clause of the Fifth Amendment, as applied to the States through the Due Process Clause of the Fourteenth Amendment. After analyzing the elements of each offense, the court held that because "the lesser offense, failing to reduce speed, requires no proof beyond that which is necessary for conviction of the greater, involuntary manslaughter, . . . for purposes of the double jeopardy clause, the greater offense is by definition the 'same' as the lesser offense included within it." *Id.,* at 239, 375 N. E. 2d, at 91. Thus the court concluded that the man-

---

tion (b), the court in the interest of justice may order that one or more of such charges be tried separately."

Section 3–4 (b) of the Illinois Criminal Code, Ill. Rev. Stat., ch. 38, § 3–4 (b) (1979), provides in pertinent part:

"A prosecution is barred if the defendant was formerly prosecuted for a different offense, . . . if such former prosecution: (1) Resulted in either a conviction or an acquittal, and the subsequent prosecution . . . was for an offense with which the defendant should have been charged on the former prosecution, as provided in Section 3–3 of this Code (unless the court ordered a separate trial of such charge). . . ."

The juvenile court held that because the prosecution knew at the time the traffic offense was prosecuted that the automobile accident had resulted in the deaths that were the basis of the manslaughter charges, § 3–3 required that the traffic offense and the manslaughter charges be prosecuted in a single prosecution. The court therefore concluded that the manslaughter prosecution was barred by § 3–4 (b)(1).

slaughter prosecution was barred by the Double Jeopardy Clause.

The dissenting justices argued that the manslaughter prosecution was not barred by the Double Jeopardy Clause because the homicide charge could be proved by showing one or more reckless acts other than the failure to reduce speed. *Id.*, at 242, 251–253, 375 N. E. 2d, at 93, 96–97 (Underwood, J., joined by Ryan, J., dissenting).

On November 27, 1978, we granted the State's petition for certiorari, vacated the judgment, and remanded the case to the Supreme Court of Illinois to consider whether its judgment was based upon federal or state constitutional grounds. 439 U. S. 974 (1978). After the Supreme Court of Illinois, on remand, certified that its judgment was based upon federal constitutional grounds, we again granted a writ of certiorari. 444 U. S. 823 (1979).

II

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." This constitutional guarantee is applicable to the States through the Due Process Clause of the Fourteenth Amendment, *Benton* v. *Maryland,* 395 U. S. 784 (1969), and it applies not only in traditional criminal proceedings but also in the kind of juvenile proceedings Vitale faced. *Breed* v. *Jones,* 421 U. S. 519 (1975).

The constitutional prohibition of double jeopardy has been held to consist of three separate guarantees: (1) "It protects against a second prosecution for the same offense after acquittal. [(2) I]t protects against a second prosecution for the same offense after conviction. [(3)] And it protects against multiple punishments for the same offense." *North Carolina* v. *Pearce,* 395 U. S. 711, 717 (1969) (footnotes omitted). Because Vitale asserts that his former conviction for failing to reduce speed bars his manslaughter prosecution, we are concerned with only the second of these three guarantees in the instant case. The sole question before us is whether the

offense of failing to reduce speed to avoid an accident is the "same offense" for double jeopardy purposes as the manslaughter charges brought against Vitale.

In *Brown* v. *Ohio*, 432 U. S. 161 (1977), we stated the principal test for determining whether two offenses are the same for purposes of barring successsive prosecutions. Quoting from *Blockburger* v. *United States*, 284 U. S. 299, 304 (1932), which in turn relied on *Gavieres* v. *United States*, 220 U. S. 338, 342–343 (1911), we held that

> " '[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' " 432 U. S., at 166.

We recognized that the *Blockburger* test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial. Thus we stated that if " 'each *statute* requires proof of an additional fact which the other does not,' *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871)," the offenses are not the same under the *Blockburger* test. 432 U. S., at 166 (emphasis supplied); *Iannelli* v. *United States*, 420 U. S. 770, 785, n. 17 (1975).[6]

### III

We accept, as we must, the Supreme Court of Illinois' identification of the elements of the offenses involved here. Under Illinois law, involuntary manslaughter with a motor vehicle involves a homicide by the "reckless operation of a motor vehicle in a manner likely to cause death or great bodily

---

[6] In *Iannelli* v. *United States*, 420 U. S., at 785, n. 17, we stated: "[T]he Court's application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes."

harm." *In re Vitale,* 71 Ill. 2d, at 239, 375 N. E. 2d, at 91. The charge of failing to reduce speed on which respondent was convicted requires proof "that the defendant drove carelessly and failed to reduce speed to avoid colliding with a person." *Id.,* at 238, 375 N. E. 2d, at 91. The Illinois court, after specifying these elements, then stated that "the lesser offense, failing to reduce speed, requires no proof beyond that which is necessary for conviction of the greater, involuntary manslaughter" and concluded, as a matter of federal law, that "the greater offense is by definition the 'same' as the lesser offense included within it." *Id.,* at 239, 375 N. E. 2d, at 91.

The Illinois court relied upon our holding in *Brown* v. *Ohio, supra,* that a conviction for a lesser-included offense precludes later prosecution for the greater offense. There, Brown was first convicted of joyriding in violation of an Ohio statute under which it was a crime to "take, operate, or keep any motor vehicle without the consent of its owner." He was then convicted under another statute of stealing the same motor vehicle. The Ohio courts had held that every element of the joyriding "is also an element of the crime of auto theft," and that to prove auto theft one need prove in addition to joyriding only the intent permanently to deprive the owner of possession. Holding that the second prosecution was barred, by the Double Jeopardy Clause and the Fourteenth Amendment, we observed that "the prosecutor who has established joyriding need only prove the requisite intent in order to establish auto theft." *Id.,* at 167. But we also noted that "the prosecutor who has established auto theft necessarily has established joyriding as well." *Id.,* at 168.

Both observations were essential to the *Brown* holding. Had the State been able to prove auto theft, without also proving that the defendant took, operated, or kept the auto without the consent of the owner—if proof of the auto theft had not necessarily involved proof of joyriding—the successive prosecutions would not have been for the "same offense" within the meaning of the Double Jeopardy Clause.

Vitale does not dispute this proposition, but insists that the Illinois court fully satisfied *Brown* when it held that the lesser offense of failure to reduce speed "requires no proof beyond that which is necessary for a conviction of the greater, involuntary manslaughter." It is clear enough from the opinion below that manslaughter by motor vehicle could be proved against Vitale by showing a death caused by his recklessly failing to slow his vehicle to avoid a collision with the victim. Proving manslaughter in this way would also prove careless failure to slow; nothing more would be needed to prove the latter offense, an offense for which Vitale has already been convicted.

The State, however, does not concede that its manslaughter charge will or must rest on proof of a reckless failure to slow; it insists that manslaughter by automobile need not involve any element of failing to reduce speed. The petition for wardship charging manslaughter alleged only that Vitale "without lawful justification, while recklessly driving a motor vehicle, caused [two] death[s]" in violation of the manslaughter statute. Further, the dissenting justices relied upon the absence of any showing that the manslaughter charge on which respondent had not been tried, would rest upon his reckless failure to reduce speed. Nor could it be known, in their view, what particular reckless acts might be relied upon to prove the homicide charge.[7] The State agrees, and sub-

---

[7] "The petition for wardship may have been based on Vitale's acts in permitting his attention to be diverted while driving at a high rate of speed, failing to appropriately maintain the vehicle's braking system, failing to note the seven school zone and speed warning signs, initially raising the speed of his auto to a dangerous level, or by disobeying the commands of the crossing guard. While we do not now know which of that series of acts the State intended to rely on at trial, one certainly cannot now say that it would rely solely upon Vitale's failure to reduce speed to the exclusion of his other misconduct." *In re Vitale*, 71 Ill. 2d 229, 251, 375 N. E. 2d 87, 97 (1978) (Underwood, J., dissenting).

The police report concerning Vitale's accident noted that the brakes on the automobile were defective and that there had been a school crossing

mits that because it is not necessary to prove a failure to slow to establish manslaughter, the rule of *Brown* v. *Ohio* does not bar its homicide case against Vitale.

The Illinois Supreme Court did not expressly address the contentions that manslaughter by automobile could be proved without also proving a careless failure to reduce speed, and we are reluctant to accept its rather cryptic remarks about the relationship between the two offenses involved here as an authoritative holding that under Illinois law proof of manslaughter by automobile would always involve a careless failure to reduce speed to avoid a collision.

Of course, any collision between two automobiles or between an automobile and a person involves a *moving* automobile and in that sense a "failure" to slow sufficiently to avoid the accident. But such a "failure" may not be reckless or even careless, if, when the danger arose, slowing as much as reasonably possible would not alone have avoided the accident. Yet, reckless driving causing death might still be proved if, for example, a driver who had not been paying attention could have avoided the accident at the last second, had he been paying attention, by simply swerving his car. The point is that if manslaughter by automobile does not always entail proof of a failure to slow, then the two offenses are not the "same" under the *Blockburger* test. The mere possibility that the State will seek to rely on all of the ingredients necessarily included in the traffic offense to establish an element of its manslaughter case would not be sufficient to bar the latter prosecution.

## IV

If, as a matter of Illinois law, a careless failure to slow is always a necessary element of manslaughter by automobile, then the two offenses are the "same" under *Blockburger* and

---

guard and a stop sign at the intersection where the accident occurred. (Record 29, 30.)

Vitale's trial on the latter charge would constitute double jeopardy under *Brown* v. *Ohio*.[8] In any event, it may be that to sustain its manslaughter case the State may find it necessary to prove a failure to slow or to rely on conduct necessarily involving such failure; it may concede as much prior to trial. In that case, because Vitale has already been convicted for conduct that is a necessary element of the more serious crime for which he has been charged, his claim of double jeopardy would be substantial under *Brown* and our later decision in *Harris* v. *Oklahoma*, 433 U. S. 682 (1977).

In *Harris*, we held, without dissent, that a defendant's conviction for felony murder based on a killing in the course of an armed robbery barred a subsequent prosecution against the same defendant for the robbery. The Oklahoma felony-murder statute on its face did not require proof of a robbery to establish felony murder; other felonies could underlie a felony-murder prosecution.[9] But for the purposes of the Double Jeopardy Clause, we did not consider the crime generally described as felony murder as a separate offense distinct from its various elements. Rather, we treated a killing in the course of a robbery as itself a separate statutory offense, and the robbery as a species of lesser-included offense. The State conceded that the robbery for which petitioner had been indicted was in fact the underlying felony, all elements of

---

[8] We recognized in *Brown* v. *Ohio*, 432 U. S., at 169, n. 7 that "[a]n exception may exist where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence." This exception is not applicable here because the trial court found that the prosecution was aware that Vitale's accident had resulted in two deaths at the time he was prosecuted for failing to reduce speed.

[9] The Oklahoma felony-murder statute under which Harris was convicted, Okla. Stat., Tit. 21, § 701 (3) (1971), provided that homicide is murder "[w]hen perpetrated without any design to effect death by a person engaged in the commission of any felony."

which had been proved in the murder prosecution. We held the subsequent robbery prosecution barred under the Double Jeopardy Clause, since under *In re Nielsen,* 131 U. S. 176 (1889), a person who has been convicted of a crime having several elements included in it may not subsequently be tried for a lesser-included offense—an offense consisting solely of one or more of the elements of the crime for which he has already been convicted. Under *Brown,* the reverse is also true; a conviction on a lesser-included offense bars subsequent trial on the greater offense.

By analogy, if in the pending manslaughter prosecution Illinois relies on and proves a failure to slow to avoid an accident as the reckless act necessary to prove manslaughter, Vitale would have a substantial claim of double jeopardy under the Fifth and Fourteenth Amendments of the United States Constitution.

## V

Because of our doubts about the relationship under Illinois law between the crimes of manslaughter and a careless failure to reduce speed to avoid an accident, and because the reckless act or acts the State will rely on to prove manslaughter are still unknown, we vacate the judgment of the Illinois Supreme Court and remand the case to that court for further proceedings not inconsistent with this opinion.[10]

*So ordered.*

MR. JUSTICE STEVENS, with whom MR. JUSTICE BRENNAN, MR. JUSTICE STEWART, and MR. JUSTICE MARSHALL join, dissenting.

The controlling issue in this case is whether respondent's failure to reduce speed to avoid a collision, in violation of

---

[10] We note also that the Illinois Supreme Court did not reach the question whether the lower Illinois courts were correct in dismissing the manslaughter case under the State's compulsory joinder statute.

§ 11–601 (a) of the Illinois Motor Vehicle Code,[1] was a lesser offense included within the greater offense of killing a person by the reckless "driving of a motor vehicle," in violation of § 9–3 (b) of the Illinois Criminal Code.[2] The Illinois Supreme Court held that it was and that, because respondent had already been convicted on the lesser charge, the State was barred by the Double Jeopardy Clause of the Fifth Amendment, as applied to the States through the Fourteenth Amendment, from prosecuting him on the greater charge.

There are two separate reasons, each of which is sufficient in itself, for affirming the judgment of the Illinois Supreme Court. First, after applying the test set forth in *Brown* v. *Ohio,* 432 U. S. 161, the Illinois Supreme Court made a finding that failing to reduce speed to avoid a collision is a lesser-included offense of reckless homicide as a matter of state law. This Court clearly has a duty to respect that finding. Second, even if the dissenting members of the Illinois Supreme Court were correct in their view that, as a matter of state law, the traffic offense is not necessarily a lesser-included

---

[1] Illinois Rev. Stat., ch. 95½, § 11–601 (a) (1979), provides:
"No vehicle may be driven upon any highway of this State at a speed which is greater than is reasonable and proper with regard to traffic conditions and the use of the highway, or endangers the safety of any person or property. The fact that the speed of a vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions. *Speed must be decreased as may be necessary to avoid colliding with any person or vehicle on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.*" (Emphasis supplied.)

[2] "If the acts which cause the death consist of the driving of a motor vehicle, the person may be prosecuted for reckless homicide or if he is prosecuted for involuntary manslaughter, he may be found guilty of the included offense of reckless homicide." Ill. Rev. Stat., ch. 38, § 9–3 (b) (1973).

offense in every reckless homicide prosecution, the Double Jeopardy Clause bars the homicide prosecution under the particular facts of this case. For, even if the State intended to rely on evidence other than respondent's failure to reduce speed to establish the element of reckless driving necessary for a homicide conviction, the prosecutor's failure to apprise the respondent and the court of such a theory at some point in the lengthy proceedings on the double jeopardy issue should bar the second trial in this case.

## I

Relying on *Blockburger* v. *United States,* 284 U. S. 299, the Court holds that the question the Illinois Supreme Court should have addressed in this case was whether proof of reckless homicide by vehicle will always, in each and every case, establish the defendant's guilt of the traffic offense as well. If not, the Court states that the traffic offense is not necessarily the "same offense" for double jeopardy purposes and therefore the second prosecution may not be barred by the Double Jeopardy Clause.[3] *Ante,* at 419. The Court then goes on to discuss the position of the dissenting justices in the Illinois Supreme Court that it is theoretically possible for an Illinois prosecutor to prove a charge of reckless homicide by vehicle without proving a failure to reduce speed in order to avoid a collision. Because it finds the majority's response to this argument "cryptic," the Court refuses to accept the Illinois court's clear determination that the traffic offense is a lesser-included offense of reckless homicide; instead, it reverses and remands for a new determination as to whether "under Illinois law proof of manslaughter by automobile would always involve a careless failure to reduce speed to avoid a collision."[4]

---

[3] See the discussion of Part IV of the Court's opinion, *infra,* at 426.

[4] "The Illinois Supreme Court did not expressly address the contentions that manslaughter by automobile could be proved without also proving a

I cannot agree that this is an appropriate disposition. As the Court itself recognizes, it is not the province of this or any other federal court to tell the State of Illinois what is or is not a lesser-included offense under state law.[5] To the extent that this Court has any role at all, it is to ensure that the States apply the proper analytic framework insofar as they rely on the Double Jeopardy Clause of the Federal Constitution. Unlike the Court, I have no doubt that in this case the Illinois Supreme Court did apply the proper test.

As the dissenting justices in the Illinois Supreme Court pointed out at some length, the Illinois courts are hardly unfamiliar with the *Blockburger* test, having consistently applied it for many years in determining whether two offenses are the same for purposes of either the Double Jeopardy Clause or the State's own compulsory joinder statute. *In re Vitale,* 71 Ill. 2d 229, 244–245, 375 N. E. 2d 87, 93–94 (1978). In this case the majority of the Illinois court did not purport

---

careless failure to reduce speed, and we are reluctant to accept its rather cryptic remarks about the relationship between the two offenses involved here as an authoritative holding that under Illinois law proof of manslaughter by automobile would always involve a careless failure to reduce speed to avoid a collision." *Ante,* at 419.

[5] Despite its apparent agreement with the dissenters' reading of the Illinois statutes, see *ibid.,* the Court does not hold that the Illinois Supreme Court is foreclosed from concluding on remand that failure to reduce speed is a lesser-included offense of reckless homicide by vehicle. On the contrary, the Court states:

"If, as a matter of Illinois law, a careless failure to slow is always a necessary element of manslaughter by automobile, then the two offenses are the 'same' under *Blockburger* and Vitale's trial on the latter charge would constitute double jeopardy under *Brown* v. *Ohio." Ante,* at 419–420.

See also *Brown* v. *Ohio,* 432 U. S. 161, 167, where the Court reiterated that state courts " 'have the final authority to interpret . . . that State's legislation.' *Garner* v. *Louisiana,* 368 U. S. 157, 169 (1961)," and thus accepted as "authoritative" the Ohio courts' definition of the elements of the two offenses.

to deviate from that test. On the contrary, it relied heavily on this Court's opinion in *Brown* v. *Ohio, supra,* which in turn relied upon *Blockburger.*

Thus, after examining the statutory definitions of the two crimes at issue in this case, without reference to the particular facts of this case, the Illinois Supreme Court concluded:

> "As is usually the situation between greater and lesser included offenses, the lesser offense, failing to reduce speed, requires no proof beyond that which is necessary for conviction of the greater, involuntary manslaughter. Accordingly, for purposes of the double jeopardy clause, the greater offense is by definition the 'same' as the lesser offense included within it." 71 Ill. 2d, at 239, 375 N. E. 2d, at 91.

In so holding, the court made the same finding as this Court did in *Brown* v. *Ohio*:

> "Applying the *Blockburger* test, we agree with the Ohio Court of Appeals that joyriding and auto theft, as defined by that court, constitute 'the same statutory offense' within the meaning of the Double Jeopardy Clause. App. 23. For it is clearly *not* the case that 'each [statute] requires proof of a fact which the other does not.' 284 U. S., at 304. As is invariably true of a greater and lesser included offense, the lesser offense—joyriding—requires no proof beyond that which is required for conviction of the greater—auto theft. The greater offense is therefore by definition the 'same' for purposes of double jeopardy as any lesser offense included in it." 432 U. S., at 168.

Having made the finding required by *Brown* v. *Ohio,* based on its interpretation of its own law, the Illinois Supreme Court should not now be required to go through the process all over again simply to assure this Court that it really meant what it plainly said.

## II

In Part IV of its opinion the Court states that, even if the Illinois Supreme Court should hold on remand that failure to reduce speed is not always a lesser-included offense as a matter of state law, respondent will still have a "substantial" double jeopardy claim if the State finds it necessary to rely on his failure to reduce speed in order to sustain its manslaughter case. In my opinion such a claim would not merely be "substantial"; it would be dispositive.

In *Harris* v. *Oklahoma,* 433 U. S. 682, we held that a conviction on a felony-murder charge barred a subsequent prosecution for robbery, where the robbery had been used to establish the requisite intent on the murder charge. Cf. *Whalen* v. *United States,* 445 U. S. 684. Since it was theoretically possible that a different felony could have supported the murder charge, such a result may not have been required by a literal application of the *Blockburger* test, see *Whalen* v. *United States, supra,* at 708–711 (REHNQUIST, J., dissenting). However, the entire Court agreed that it was required by the Double Jeopardy Clause. In this case, it is equally clear that the State could not use respondent's failure to reduce speed to avoid a collision as the reckless act necessary to establish reckless homicide by vehicle, even if theoretically his recklessness could be proved in some other way.

Throughout the five years that this case has been in litigation, the State has apparently not seen fit to reveal the basis of its homicide prosecution. The Court does not view this omission as an important one. On the contrary, its opinion implies that the State may proceed to trial before a determination is made on respondent's double jeopardy claim. But surely such a procedure is inconsistent with the Double Jeopardy Clause, which was specifically designed to protect the citizen from multiple trials. The vital interest in avoiding an unlawful second trial led the Court in *Abney* v. *United States,* 431 U. S. 651, to allow an appeal in advance of trial

in order to assure the defendant that the substance of his constitutional right to be protected against double jeopardy would not be lost before his plea could be vindicated. In that case the Court emphasized that "the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to *trial* for the same offense." *Id.,* at 660–661 (emphasis in original). Continuing, the Court stated:

"Because of this focus on the 'risk' of conviction, the guarantee against double jeopardy assures an individual that, among other things, he will not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense. It thus protects interests wholly unrelated to the propriety of any subsequent conviction. Mr. Justice Black aptly described the purpose of the Clause:

" 'The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' *Green* [v. *United States,* 355 U. S. 184,] 187–188.

". . . [I]f a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs." *Id.,* at 661–662. (Emphasis in original.)

If a defendant is entitled to have an appellate court rule on his double jeopardy claim in advance of trial, he is surely entitled to a definitive ruling by the trial court in advance

of trial. Since the State has not provided the respondent with notice of any basis for the prosecution that does not depend upon proving, for the second time, a careless failure to reduce speed, I would not require this respondent to stand trial again.

I respectfully dissent.