**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Roger George FLITTIE, Defendant and Appellant.**

**No. 13163.**

Supreme Court of South Dakota.

Argued March 24, 1981.

Decided April 21, 1982.

---

James E. McMahon, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen. and Leann Larson Finke, Asst. Atty. Gen., Pierre, on brief.

David R. Gienapp of Arneson, Issenhuth & Gienapp, Madison, for defendant and appellant.

WOLLMAN, Chief Justice (on reassignment).

Defendant appeals from his judgment of conviction and sentence on charges of burglary in the first degree and accessory after the fact to murder. We hold that the doctrine of collateral estoppel bars defendant's prosecution and conviction on the charge of aiding and abetting the crime of first-degree burglary, and we reverse the judgment of conviction entered on that charge. We affirm defendant's judgment of conviction on the charge of accessory after the fact to murder.

The charges stem from the death of defendant's mother, Ruth Flittie, on October 10, 1975, in Brookings, South Dakota. Defendant and Tommy Downs were charged by information filed on February 16, 1978, with conspiracy to commit murder and murder. Downs pleaded guilty to the murder charge and was sentenced to life in prison. Defendant pleaded not guilty to both counts. He was convicted by a jury of the conspiracy charge and acquitted of murder. A sentence of five years was imposed on the

conspiracy conviction in May 1978. On December 21, 1978, defendant was charged with the crimes here involved.

■ Defendant argues that the principle of collateral estoppel embodied in the double jeopardy clause of the fifth amendment to the United States Constitution bars this second prosecution. In determining whether offenses are the same for double jeopardy purposes, we have adopted and adhered to the "same evidence test" and have repudiated the "same transaction test." *State v. Coe*, 286 N.W.2d 340 (S.D.1979); *State v. Pickering*, 88 S.D. 548, 225 N.W.2d 98 (1975). We have thus aligned ourselves with the United States Supreme Court, *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and a majority of states.

■ The principle of criminal collateral estoppel is embodied in the double jeopardy clause of the fifth amendment to the United States Constitution and as such is enforceable against the states. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The *Ashe* court recognized that while collateral estoppel may be an awkward phrase, it is an important principle in our system of criminal justice. "It means simply that when a issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475. When collateral estoppel is raised as a defense to a subsequent prosecution, the reviewing court must:

> "[E]xamine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Sealfon v. United States*, 332 U.S. 575, 579, 68 S.Ct. 237, 240 [92 L.Ed. 180]. Any test

more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings[.]

*Ashe v. Swenson*, supra, 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475–76 (footnote omitted).

With these dictates in mind, we first consider whether the burglary charge was barred by defendant's acquittal on the murder charge. Defendant argues that the only issue upon which a rational jury could have based his acquittal on the murder charge was whether he had aided and abetted Tommy Downs. He argues that this was also the only issue in contention at his second prosecution on the burglary charge.

■ An examination of the record of the first trial reveals that defendant did not dispute that his mother had been murdered or that Downs had committed the murder. His only defense was that he had not aided and abetted Downs. The jury that acquitted defendant on the murder charge therefore could not have rationally grounded its verdict on an issue other than whether he had aided and abetted Downs. The evidence establishing the facts and circumstances surrounding the murder charge and the burglary charge was the same at both trials. This in itself is not fatal, as the procedure outlined in *Ashe* to determine the validity of a collateral estoppel defense does not turn on the evidence introduced but on the issues foreclosed. See *Turner v. Arkansas*, 407 U.S. 366, 92 S.Ct. 2096, 32 L.Ed.2d 798 (1972). At his trial on the burglary charge, however, defendant did not dispute that Downs had burglarized his mother's house with intent to murder her. Again, his only defense was that he had not aided and abetted Downs in the commission of the crime. We therefore conclude that the issue whether defendant had aided and abetted Downs in the burglary was foreclosed by his previous acquittal on the murder charge, and thus the principle of collateral estoppel barred subsequent prosecution on the burglary charge.

■ We next consider whether the accessory charge was barred by defendant's conviction on the conspiracy charge. *Ashe v. Swenson,* supra, and *Turner v. Arkansas,* supra, turn on the proposition that the doctrine of collateral estoppel operates to bar prosecution on a subsequent charge only if the issue necessary to support a conviction on the subsequent charge was necessarily decided in a defendant's favor at a prior trial. A reading of the record in the first trial convinces us that this was not the situation here:

(1) The information charging defendant with conspiracy stated: "[d]uring the weeks immediately preceding the 10th day of October, 1975, and thereafter until on or about the 10th day of May, 1976" defendant and Tommy Downs conspired to kill Ruth Flittie in violation of SDCL 22–16–4.

(2) Overt Act # 4 under the above conspiracy count stated: "[t]hat thereafter [after October 10, 1975], and from time to time, the said ROGER GEORGE FLITTIE did pay certain sums of money to . . . TOMMY EDWARD DOWNS."

(3) Considerable evidence in the first trial was introduced to show that after the murder defendant sent Downs out of state and gave him money.

(4) At closing argument, defendant's attorney all but admitted that defendant was involved after the fact.

(5) The trial court instructed the jury, in part, as follows:

The substance of the charge in Count I is that during the weeks immediately preceding the 10th day of October, 1975, and thereafter until on or about the 10th day of May, 1976, within Brookings County, South Dakota, the defendant did willfully, intentionally, conjointly, and feloniously conspire with one Tommy Edward Downs to commit the crime of murder, in that said Tommy Edward Downs and Roger George Flittie did conspire and plan the taking of the life of one Ruth K. Flittie, mother of the defendant, thereby enabling him to inherit from his mother's estate, and that pursuant to said plan, the defendant agreed to pay the said Tommy Edward Downs for the killing of his mother, and one or both of said parties did an act to effect the object of the conspiracy to murder one human being, to wit: Ruth K. Flittie.

■ It is evident that the jury in the first trial convicted defendant on the conspiracy charge based on his post-murder conduct. We cannot say that any of the issues necessary to a conviction on the accessory after the fact to murder charge were necessarily decided in defendant's favor at the first trial. Consequently, the doctrine of collateral estoppel did not prevent the State from prosecuting defendant on the accessory charge in a separate action.

The other issue we must decide is defendant's claim that the trial court erred when it ordered that the sentence on the accessory after the fact to murder conviction run consecutively to the sentence defendant was already serving on his earlier conviction of conspiracy to commit murder.

■ SDCL 22–6–6.1 reads: "If a defendant has been convicted of two or more offenses before judgment on either, the judgment may be that the imprisonment on either one may commence at the expiration of the imprisonment upon any other of the offenses." It is apparent that the purpose of the statute is to limit a court's power to impose consecutive sentences to situations described in the statute. Since judgment had already been entered on the conspiracy conviction, the trial court was without power to order that defendant's sentence on the accessory conviction run consecutively to it.

We have considered defendant's remaining contentions and conclude that those that are not made moot by reason of our decision regarding the burglary conviction do not present any issue of reversible error.

The judgment of conviction on the burglary charge is reversed. The judgment of conviction on the accessory charge is affirmed, and the case is remanded for the entry of a new sentence on that charge in accordance with the views set forth in this opinion.

DUNN and HENDERSON, JJ., concur.

MORGAN and FOSHEIM, JJ., dissent.

FOSHEIM, Justice (dissenting).

I would reverse on both convictions. The majority's affirmance of defendant's accessory conviction incorrectly applies the principle of collateral estoppel with this language: "We cannot say that any of the issues necessary to a conviction on the accessory after the fact to murder charge were necessarily decided in defendant's *favor* at the first trial." (Emphasis added.) Collateral estoppel does not require a showing of prior acquittal before claiming that a subsequent conviction is barred. The majority opinion totally ignores the seminal United States Supreme Court decision on the doctrine of criminal collateral estoppel, which held: " '[w]here a criminal charge has been adjudicated upon by a court having jurisdiction to hear and determine it, that adjudication, whether it takes the form of an *acquittal or conviction*, is final as to the matter so adjudicated upon, and may be pleaded in bar to any subsequent prosecution for the same offence. . . . In this respect the criminal law is in unison with that which prevails in civil proceedings.' " *United States v. Oppenheimer*, 242 U.S. 85, 88, 37 S.Ct. 68, 69, 61 L.Ed. 161 (1916) (citation omitted, emphasis added). *Accord, Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980) and *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (Fifth Amendment guarantee against double jeopardy protects against a second prosecution following an acquittal or a conviction and protects against multiple punishments for the same offense). The *Oppenheimer* principle has

never been modified. *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), upon which the majority opinion seemingly rests, cites *Oppenheimer* in support of its statement that collateral estoppel is an established rule of federal law.

Based on the collateral estoppel principles enunciated in *Oppenheimer* and *Ashe*, the accessory after the fact to murder issue was adjudicated by defendant's conviction on the conspiracy charge at his first trial, thus barring his subsequent prosecution on the accessory charge.

The record of the first trial reveals not only the five points listed by the majority, but the following as well.

(1) At closing argument, defendant's attorney all but admitted defendant was involved after the fact, but he hotly disputed that the State had proved beyond a reasonable doubt that defendant was guilty of conspiracy and murder.

(2) The jury convicted defendant on the conspiracy charge but acquitted him of murder.

The State contends these verdicts were simply inconsistent. That rationale could perhaps be accepted except for the fact that the information charging conspiracy, the evidence presented at trial, and the instruction on conspiracy allowed the jury to convict on the conspiracy charge if they found that the defendant helped Tommy Downs after the murder.

Looking at the elements of the separate offenses there is no likely common issue of ultimate fact between a conspiracy charge and an accessory after the fact charge.[1] The acts proving a conspiracy to commit

---

1. At the time the crime was committed, the statutory definition of conspiracy to commit an offense (SDCL 22-3-8) read:

   If two or more persons conspire, either to commit any offense against the state of South Dakota, or to defraud the state of South Dakota, or any county, township, school district or municipal corporation in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than ten thousand dollars, or imprisoned in

the state penitentiary for not more than five years, or both.

At the time the crime was committed, the statutory definition of accessory (SDCL 22-3-5) read:

   All persons who, after the commission of any felony, conceal or aid the offender with knowledge that he has committed a felony and with intent that he may avoid or escape from arrest, trial, conviction, or punishment, are accessories. There are no accessories to misdemeanors.

murder logically end with the commission of that crime while the acts proving an accessory after the fact to murder reasonably begin only after the homicide in deed becomes a fact. In this case, however, a review of the allegation, the evidence, the instruction, and other relevant matter, to determine how a rational jury grounded its verdict in the first trial, as mandated in *Ashe, supra*, plainly reveals that the defendant's acts after the murder were made a major issue in the trial of the conspiracy count. Recognition of this unusual situation is the only rational explanation for the seemingly inconsistent verdicts at the first trial. Having decided the defendant did not aid and abet in the murder, a rational jury, acting on such allegation, evidence and instruction, could only have grounded its conviction on the conspiracy count on the issue of whether or not the defendant helped Tommy Downs after the murder. This is the same issue that the defendant sought to foreclose at his trial on the accessory count. "One of the purposes of the doctrine of collateral estoppel is to prevent prosecutors from purposefully using their powers to provide plural opportunities to convict an accused. Another is to encourage care in the preparation and presentation of the prosecutor's initial case in order to prevent relitigation[.]" *Wise v. State*, 47 Md.App. 656, 425 A.2d 652, 657 (1981) (citing *Ashe*, 397 U.S. at 445, n. 10, 90 S.Ct. at 1195, n. 10; quoting Mayers & Yarbrough, *Bis Vexari: New Trials and Successive Prosecutions*, 74 Harv.L.Rev. 1, 32 (1960)). The record is clear that defendant's second prosecution disregarded those purposes.

The conspiracy charge extended the time frame beyond the murder. This, plus the introduction of evidence of acts after the murder and the similarity between the accessory instruction and the charge, foreclosed the accessory issue and thus provided a valid defense of collateral estoppel to the subsequent accessory after the fact to murder charge.

I am hereby authorized to state that Justice Morgan joins in this dissent.