STATE of South Dakota, Plaintiff and Appellant

v.

Elmer R. HEAD, Defendant and Appellee.

No. 17132.

Supreme Court of South Dakota.

Argued Feb. 11, 1991.

Decided May 1, 1991.

---

Roger A. Tellinghuisen, Atty. Gen., Pierre, Craig M. Eichstadt, Asst. Atty. Gen., Pierre, for plaintiff and appellant.

Curt R. Ewinger, Rice and Ewinger, Aberdeen, for defendant and appellee.

SABERS, Justice.

Circuit court dismissed all charges against defendant for State's violation of 180–day rule, including subsequently filed charges arising out of the same criminal transaction. State appeals. We affirm.

### Facts

In the early morning of August 2, 1989, an Aberdeen woman was accosted on a downtown street near her home. Her assailant grabbed her around the neck and dragged her across the street behind a building. He threatened her, pulled her hair, forcibly removed her pants and raped her, although he was unable to complete intercourse. He finally gave up and ran away.

The same day, Elmer Head was arrested and made his first appearance on a charge of first degree rape in violation of SDCL 22–22–1(1). Head was arraigned following a preliminary hearing on August 17, 1989. He pled not guilty.

State sought DNA testing of tissue samples in order to establish the identity of the rapist, but State was not notified that the

results of these tests were inconclusive until early February, 1990. As of January 29, 1990, 180 days from Head's first appearance on August 2, 1989, State neither disposed of its case against Head nor filed a motion for good cause delay pursuant to SDCL 23A–44–5.1.

Some three weeks later, on February 23, 1990, Head filed a motion to dismiss with prejudice based on the 180–day rule. On February 26, Head received notice that the State dismissed the rape charge *without* prejudice pursuant to SDCL 23A–44–2. Moreover, a Brown County grand jury indicted Head on February 26 on charges of (1) aggravated assault in violation of SDCL 22–18–1.1(1) [1]; (2) attempted first-degree rape in violation of SDCL 22–22–1(1) [2]; and (3) kidnapping in violation of SDCL 22–19–1(3) [3].

Head made a motion to dismiss with prejudice. Following a hearing on March 29, 1990, the circuit court voided State's dismissal without prejudice and ordered the dismissal with prejudice of not only the original first-degree rape charge, but also the three additional charges. The court reasoned that SDCL 23A–44–5.1 requires not only dismissal with prejudice of the initial charge once 180 days have elapsed without disposition of the case or motion for good cause delay, but also "all charges which could have been brought against the Defendant arising out of the same set of facts that gave rise to the initial complaint[.]"

On appeal, State argues that even if application of the 180–day rule requires dismissal with prejudice of the first degree rape charge, it does not require dismissal with prejudice of the three additional charges subsequently filed even though they arose out of the same transaction.

### Decision

■ All defendants charged with criminal offenses enjoy the constitutional right to a "speedy and public trial." U.S. Const. amend. VI; S.D. Const. art. VI, § 7. In South Dakota, as in many other states, how speedy this public trial must be has been spelled out by statute. SDCL 23A–44–5.1 [4] requires that charges against a defendant be dismissed if more than 180 days elapse between the defendant's first court appearance and the final disposition of the case by either guilty plea, nolo contendere plea, trial or dismissal—unless there is some good cause for delay beyond the 180–day period. This 180–day rule does not come into conflict with statutes of limitations for criminal offenses for the obvious reason that statutes of limitations prescribe the maximum time between the offense and the charge, whereas the 180–day rule prescribes the maximum time between the charge and the resolution of the case.

■ This court clarified the operation of the 180–day rule in *State v. Hoffman*, 409 N.W.2d 373 (S.D.1987). We held that State may take advantage of the "good

---

**1.** SDCL 22–18–1.1(1) provides: "Any person who [ ] [a]ttempts to cause serious bodily injury to another, or causes such injury, under circumstances manifesting extreme indifference to the value of human life ... is guilty of aggravated assault. Aggravated assault is a Class 3 felony."

**2.** Both the August 1989 first degree rape charge and the February 1990 attempted first degree rape charge cited only SDCL 22–22–1(1), which provides: "Rape is an act of sexual penetration accomplished with any person ... under any ... of the following circumstances:
(1) Through the use of force, coercion or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution[.]"

**3.** SDCL 22–19–1(3) provides in part: "Any person who shall seize, confine, inveigle, decoy,

abduct or carry away any person and hold or detain such person ... [t]o inflict bodily injury on or to terrorize the victim or another ... is guilty of kidnapping. Kidnapping is a Class 1 felony[.]"

**4.** SDCL 23A–44–5.1 provides:
The prosecution shall dispose of all criminal cases by plea of guilty or nolo contendere, trial or dismissal within one hundred eighty days from the date the defendant has first appeared before a judicial officer on the complaint or indictment. Any period of delay shall be excluded if the trial court finds good cause for the delay. In the event of the prosecution's failure to dispose of the action within the time limit required by this section, the action shall be dismissed.

cause delay" exception to the rule only if it files a motion to that effect during the 180–day period. *Id.* at 375. We also held that, absent such motion by State for good cause delay, once 180 days have elapsed, the charge against the defendant is dismissed "with prejudice" and may not be re-filed later. *Id.* at 376. When a charge is dismissed with prejudice, the dismissal is res judicata as to the offense charged. *Parks v. State,* 41 Md.App. 381, 397 A.2d 212, 215 (1979), *aff'd,* 287 Md. 11, 410 A.2d 597 (1980); *Foundry Systems & Supply Inc. v. Industry Dev. Corp.,* 124 Ga.App. 589, 185 S.E.2d 94, 95–96 (1971).

▮ Here, the original August 1989 charge of first degree rape was subject to dismissal with prejudice when, after 180 days had passed, State had neither brought Head to trial nor filed a motion for good cause delay, and State is forever barred from re-filing the same charge. That much is clear and State does not contest it. State does discuss mitigating circumstances to account for its failure to provide Head with a speedy trial, but that should have been the subject of a motion for good cause delay and is immaterial now.

State argues that the February 1990 charges of aggravated assault, attempted rape and kidnapping are not barred by the dismissal with prejudice of the original charge because they are new charges for separate offenses and not a re-charging of the same offense, even though all arose out of the same transaction.

When the speedy trial period begins to run for a defendant charged with one offense and subsequently charged with a second offense arising from the same transaction is discussed in II ABA Standards for Criminal Justice (1980). Standard 12–2.2(a) provides that the speedy trial period for the second charge should be counted from the date of the first charge "if the defendant has been continuously held in custody or on bail or recognizance until that date to answer for … a crime *based on the same conduct or arising from the same criminal episode*" (emphasis added). In other words, this is a *transactional* rule for determining what constitutes the "same offense" for speedy trial purposes. As the Commentary for this Standard explains, "the defendant should not lose credit for the time that passes between the date the defendant is held to answer and the date of the charge simply because the offense charged, arising out of the same conduct or episode, differs somewhat from the offense for which the defendant is being held to answer." *Id.*

The clear implication of this approach is that if one charge is dismissed with prejudice for violation of the 180–day rule, State cannot charge the defendant with the violation of another statute arising out of the same transaction any more than it can re-file the original charge a second time. That was exactly the holding of the Pennsylvania Supreme Court in *Commonwealth v. Earp,* 476 Pa. 369, 382 A.2d 1215 (1978). As we said in *State v. Hoffman,* "[a]llowing State to simply recharge offenders after dismissal under SDCL 23A–44–5.1 would totally defeat the purpose behind the rule." 409 N.W.2d at 376. Allowing State to simply charge offenders for the same conduct under a different statute after dismissal of the first charge would also defeat the purpose behind the rule.[5]

---

5. State acknowledges that Head could not be re-charged with the same offense once the first charge was dismissed with prejudice. However, it argues that the "same offense" should not include all possible charges arising out of the same transaction. While conceding that "[d]ouble jeopardy is not applicable to this case as such," State urges that double jeopardy analysis of what constitutes the "same offense" provides an "interesting analogy."

For double jeopardy purposes the United States Supreme Court has held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) (citations omitted). Under the *Blockburger* approach a defendant may be tried twice for the same criminal *transaction* so long as he is charged under two different *statutes* and both statutes contain at least one element which the other statute does not. South Dakota adheres to the *Blockburger* approach for double jeopardy purposes. *State v. Flittie,* 318 N.W.2d 346, 348 (S.D.1982).

Nevertheless, the "arising from the same transaction" rule presents problems when stated too broadly, and the Pennsylvania court has retreated somewhat from its *Earp* holding. In *Commonwealth v. Genovese*, 493 Pa. 65, 425 A.2d 367 (1981), the Court held that, where State dismisses a charge within the speedy trial period and subsequently re-files the same charge, a new speedy trial period should commence with the second filing when there is no indication in the record that State's dismissal of the original charge had anything to do with circumventing the 180–day rule. *Accord State v. Lowther*, 434 N.W.2d 747, 751–752 (S.D.1989). (However, "[w]here the prosecution is voluntarily terminated and the record shows an attempt to manipulate the requirements of the 180–day rule, the time period will be computed from the date the defendant appeared before a judicial officer on the original indictment." *Id.* at 751 (*citing Commonwealth v. Whiting*, 509 Pa. 20, 500 A.2d 806, 808 (1985))). In *Commonwealth v. Simms*, 509 Pa. 11, 500 A.2d 801 (1985), a defendant was charged with aggravated assault. When the assault victim later died and the defendant was additionally charged with homicide, the court permitted the 180–day clock on the defendant's murder trial to run from the second charge for the simple reason that at the time of the first charge, "there had been no homicide, because the victim of the aggravated assault had not yet died." *Id.* 500 A.2d at 804.

Here, Head awaited trial on a charge of first degree rape for over 200 days. Only after the 180–day period had run, in fact, in the same week Head moved for dismissal with prejudice, did State attempt to dismiss the original charge without prejudice and to bring three additional charges against him. One of these three new charges was a lesser included offense under the original first degree rape charge. The other two charges not only arose out of the same transaction on August 2, 1989, but they were fully chargeable on August 2, 1989. There is no indication in the record that there were any developments in the underlying facts or that State received any new evidence or information after August 2, 1989 to excuse State's delay for nearly seven months before seeking indictments. The record strongly suggests that in February, 1990, State realized it was about to lose its case against Head through its own avoidable error, and that its actions were intended to circumvent the effect of the 180–day rule.

 The trial court concluded that "a dismissal with prejudice pursuant to SDCL 23A–44–5.1 is a dismissal with prejudice of all charges which could have been brought against the defendant arising out of the same set of facts that gave rise to the initial complaint or indictment." Recalling the experience of the Pennsylvania court, we hesitate to adopt this rule *in the absolute* to apply to all conceivable circumstances. Nevertheless, we have no difficulty agreeing that, under the facts of this case, the dismissal of the first degree rape charge with prejudice precluded not only the re-filing of that charge, but also the filing of aggravated assault, attempted

---

If we applied the *Blockburger* and *Flittie* double jeopardy rule to this case, the dismissal with prejudice of the August 1989 first degree rape charge would bar only the February 1990 attempted first degree rape charge because the latter is a lesser included offense of the former and contains no independent elements. Because the statutes defining aggravated assault and kidnapping contain elements not contained in SDCL 22–22–1(1), and vice-versa, these two charges would constitute separate offenses under *Blockburger* even though they arose from the same transaction.

However, *Blockburger* has been modified since *Flittie* by the more recent double jeopardy case of *Grady v. Corbin*, 495 U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), which held that the *Blockburger* test of strictly statutory comparison is no longer the exclusive means of determining whether a subsequent charge constitutes the same offense as an earlier charge. Even when State passes the *Blockburger* test because neither statute is subsumed by the other,

the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.... The critical inquiry is what *conduct* the State will prove[.]

495 U.S. at ——, 110 S.Ct. at 2093 (emphasis added).

first degree rape and kidnapping charges arising out of the same incident.

Affirmed.

HERTZ, Circuit Judge, Acting as a Supreme Court Justice, concurs.

WUEST, and HENDERSON, JJ., concur specially.

MILLER, C.J., dissents.

AMUNDSON, J., not having been a member of the Court at the time this case was argued, did not participate.

HENDERSON, Justice (specially concurring).

After the defendant's attorney notified the State that he would be filing a motion to dismiss, because the 180–day rule had run under SDCL 23A–44–5.1, the State then filed its motion for dismissal without prejudice under SDCL 23A–22–2. It is patently obvious that the State was trying to circumvent the 180–day rule.

In *Tiedeman*, this Court relied upon the *Genovese* holding, formulating the rule that the speedy trial period, pursuant to SDCL 23A–44–5.1, runs anew upon the refiling of criminal charges *if* the initial charges were (1) dismissed by a competent judicial officer and (2) no attempt was made by the State to circumvent or avoid the effects of the 180–day rule. This was also the rule announced in *Lowther*.

Here, requirement number 2 has been violated by the State. State employed diligence, prosecuting the case, *after* the 180–day rule had run. The motion to dismiss without prejudice, although crafty advocacy, was used to extricate itself from the dictates of the 180–day rule. Were we to permit this, a mockery would be made of the 180–day rule. State could, under its theory, permit the 180 days to run and then recharge the defendant with a series of charges, arising out of the same set of facts and circumstances, which the State had knowledge of when it filed its initial complaint or secured its indictment. In this case, the effect of the State's legal posture could conceivably lead to four periods of 180 days. Folly this would be, for it would abrogate the very purpose behind the 180–day rule.

My notes reflect, during the course of argument, counsel for the State conceded that the attempted rape could not theoretically be lodged against the defendant. As the majority opinion points out, the State does not contest the conclusion that it is forever barred from re-filing first degree rape charge. Perforce, were the State correct in its various contentions in this case, only the aggravated assault and kidnapping charge would survive.

State argues that it has fulfilled the standards set forth in *Tiedeman* and *Lowther*. I disagree. State slept on its rights and the rights of the victim. There are, unquestionably, competing social aspects of this decision, as Chief Justice Miller expresses, and my competing thesis is fully set forth in my special concurrence in *State v. Cross*, 468 N.W.2d 419 (1991). True, no "misconduct" has been committed by the State herein (which is not governing criteria); however, the State was negligent in prosecuting this action. As I expressed therein:

> The speedy trial rule is to further the prosecution of cases in an effective manner and to afford defendants a right to have their case tried within a reasonable time. The citizens of this state, who are witnesses and victims, should not have to wait interminably for a case to come to trial. These victims and witnesses have rights, also.

I am authorized to state that WUEST, J., joins this special writing.

MILLER, Chief Justice (dissenting).

I respectfully dissent.

The majority has taken a procedural rule and elevated it to a transactional immunity law with constitutional dimensions.

First, I suggest that the majority is rewriting SDCL 23A–44–5.1 (the 180–day rule).* Nowhere in that rule does it state,

---

* SDCL 23A–44–5.1 was significantly amended by our Court Rule 91–11 and the amendments take effect on July 1, 1991.

or even imply, that other crimes are affected. It refers specifically and exclusively to offenses "on the complaint or indictment" and requires that "the action" be dismissed for failure to comply with the rule.

In *State v. Hoffman,* 409 N.W.2d 373 (S.D.1987), this court (with this Justice dissenting on other grounds) held that the 180–day rule "stands on a different legal footing than constitutional claims and requires an analysis separate and distinct from constitutional claims." *Id.* at 375.

Now, relying in major part on the ABA Standards of Criminal Justice and commentaries thereto, a speedy trial *rule* becomes a transactional immunity law. It is absurd to suggest that the ABA Standards (and especially the commentaries thereto!) are authority for anything! They are not even secondary authority! Rather, they are merely suggestions of a lawyer committee. Typically, these committees are assisted by a staff of inexperienced people who have little or no knowledge or background in the law. I understand that generally the commentaries are the product of the staff rather than the committee. To give such "suggestions" the same weight as judicial opinions (or even treatises by noted scholars) simply is an insult to our intelligence and the integrity of the opinion.

As Justice Henderson suggests in his special writing in *State v. Tiedeman,* 433 N.W.2d 237, 241 (S.D.1988), the 180–day rule *does not* prohibit other charges arising out of the same transaction to be brought where the 180–day rule has run as to other crimes in the same transaction. Courts in other states and in the federal system (including the 8th U.S. Circuit Court of Appeals) have so held. Despite the so-called ABA standards, transactional immunity in speedy-trial rule cases has been rejected in *State v. Moritz,* 293 N.W.2d 235 (Iowa 1980); *State v. Lucero,* 108 N.M. 548, 775 P.2d 750 (App.1989), *writ quashed* 108 N.M. 582, 775 P.2d 1299 (1989); *United States v. Savage,* 863 F.2d 595 (8th Cir. 1988); *United States v. Piontek,* 861 F.2d 152 (7th Cir.1988). Even the case cited by the majority, *Commonwealth v. Whiting,* 509 Pa. 20, 500 A.2d 806 (1985), supports my position—it should be noted that it was decided four years after the *Genovese* case relied upon by the majority.

In my dissent in *Hoffman, supra* at 378, I stated:

I envision the day that some murderer, rapist, or child molester will be discharged under the 180–day rule because of some clerical error or bona fide, good cause oversight, leaving the People (who also have rights in our society) with no remedy in the courts.

The majority has now made my fear come true. More frightening is that the majority does so, not because of the language of the 180–day rule, but rather through an improper and improvident, *sua sponte* extension of the otherwise clear language of the rule.