OPINION OF THE COURT
Titone, J.
At issue in this appeal is whether an individual who has previously pleaded guilty to the misdemeanor of driving while intoxicated (Vehicle and Traffic Law § 1192 [3]), as well as to a related traffic infraction, may subsequently be prosecuted on homicide, assault and other charges arising out of the same incident when the prosecution concedes its intention to use the facts underlying the former conviction to establish essential elements of the latter crimes. The constitutional problem has arisen in this case, despite the broad protections afforded by New York’s statutory double jeopardy provisions (CPL art 40), because, in this instance, those provisions are superseded by Vehicle and Traffic Law § 1800 (d), which purports to authorize a subsequent vehicular assault and homicide prosecution even though the defendant has previously been prosecuted for and convicted of traffic violations for the same acts. A subsidiary question exists as to whether petitioner is precluded from invoking his right to be free from successive prosecutions for the same conduct because he was guilty of *283 procuring the prior conviction, without the prosecutor’s knowledge, as a means of avoiding prosecution for the more serious crimes (see, CPL 40.30 [2] [b]). Concluding that both issues should be resolved in petitioner’s favor, we now reverse the Appellate Division judgment to the contrary and hold that petitioner’s request for an order prohibiting further prosecution should have been granted.
I. Factual Background
On October 3, 1987, petitioner’s automobile allegedly crossed a double yellow line and struck two other vehicles. As a result, petitioner and the passenger of one of the other vehicles were seriously injured and another individual was killed. Tests performed after the accident revealed that petitioner had a .19% blood alcohol level.
On the night of the accident, while he was in the hospital being treated for his own injuries, petitioner was served with two uniform traffic tickets, returnable October 29, 1987, charging him, respectively, with operating a motor vehicle in an intoxicated condition (Vehicle and Traffic Law § 1192 [3]) and driving on the wrong side of the road (see, Vehicle and Traffic Law § 1120). The return date of these traffic tickets was subsequently changed, apparently without notice to the District Attorney, from the 29th to the 27th of October, a night on which the District Attorney’s office did not "cover” the Town Justice Court. The Assistant District Attorney who had prepared the paperwork on the traffic offense prosecutions (ADA Glick) was inexplicably unaware that the accident had resulted in a fatality and, consequently, his written submissions to the court, which included a cover letter, a CPL 710.30 notice and a "statement of readiness,” did not alert the court to the seriousness of the incident.
Petitioner appeared with his attorney on the scheduled return date and entered a plea of guilty to the charges contained in both traffic tickets. Petitioner’s attorney did not volunteer that the case involved a fatality and, in response to a question by the Town Justice, indicated that he had had contact with the District Attorney’s office about the case.[1] *284 Although counsel had apparently expressed a preference to have sentence imposed immediately, the court decided to postpone sentencing until November 17, 1987, because the file contained no sentencing recommendation from the prosecutor.
On the date set for sentencing, the People were represented by ADA Sauter, who was unaware that there had been a fatality, was unable to locate the file and had not spoken to ADA Glick about the case. Nevertheless, Sauter did not request an adjournment so that she could ascertain the facts necessary to make an informed sentencing recommendation. Petitioner’s attorney remained silent, although he was aware that petitioner’s automobile had been impounded in connection with an investigation of the accident. Thus, once again, the court remained ignorant of the severity of petitioner’s offense. Petitioner was ultimately sentenced on his guilty pleas to a fine, a six-month revocation of his driver’s license and other, related sanctions.
During the pendency of the traffic offense prosecution, other staff members within the District Attorney’s office had actively been investigating the possibility of pressing more serious charges against petitioner. ADA Chase, who was aware that a person had been killed in the accident, began as early as October 6, 1987 to gather evidence. Despite his active involvement in building a homicide case against petitioner, however, Chase did not attempt to ascertain the date petitioner was scheduled to appear in Town Justice Court on the traffic tickets, nor did he inform either the Town Justice Court or the Assistant District Attorney covering that court about his pending investigation. It was not until November 19, 1987, two days after the fact, that Chase learned of petitioner’s guilty plea and sentencing.
A Grand Jury presentment was finally made in early January, 1988. The delay was allegedly occasioned, at least in part, by difficulties that ADA Chase encountered in obtaining a report by an accident reconstructionist. On January 19, 1988, an indictment was issued charging petitioner with one count of reckless manslaughter (Penal Law § 125.15 [1]), two counts of second degree vehicular manslaughter (Penal Law § 125.12),[2] one count of criminally negligent homicide (Penal *285 Law § 125.10), one count of third degree reckless assault (Penal Law § 120.00 [2]), and two counts of driving while intoxicated (Vehicle and Traffic Law § 1192 [2], [3]).
 Petitioner promptly moved to dismiss the indictment on double jeopardy grounds. The motion was denied, however, after a hearing in which the County Court in which the action was being prosecuted found that petitioner had procured the traffic prosecution, "without the knowledge of the appropriate prosecutor, for the purpose of avoiding prosecution” for the more serious homicide charges (see, CPL 40.30 [2] [b]). Petitioner then commenced the present article 78 proceeding for a writ of prohibition, asserting, once again, that double jeopardy principles barred the prosecution of the January 1988 indictment. The Appellate Division dismissed the petition, without opinion, and this appeal, taken as of right on constitutional grounds, ensued. We now reverse. Since the Double Jeopardy Clause of the United States Constitution bars prosecution of the homicide and assault counts and both the Double Jeopardy Clause and the provisions of CPL article 40 bar prosecution of the remaining counts, petitioner’s request for a writ of prohibition should have been granted.[3]
II. CPL 40.30 (2) (b)
As a threshold matter, we address the application of CPL 40.30 (2) (b), which was the basis of the County Court’s refusal to dismiss the indictment.[4] That subdivision provides *286 for an exception to the general statutory prohibition against successive prosecutions (see, CPL 40.20) in cases where the previous prosecution "was for a lesser offense than could have been charged under the facts of the case, and the prosecution was procured by the defendant, without the knowledge of the appropriate prosecutor, for the purpose of avoiding prosecution for a greater offense.” Although this provision has not previously been construed by our court, it is apparent that it was intended primarily to address situations in which the defendant or his attorney induces a local criminal court, before the District Attorney has entered the picture, to accept a guilty plea and enter a conviction for a relatively minor offense as a means of foreclosing the possibility of a prosecution for a more serious offense in superior court (Staff Comment to Proposed CPL 20.30 [2] [b], at 58, cited in 3 Zett, NY Crim Prac ¶ 22.5 [2], at 22-26, & n 15 [1986 ed]; see, People v Dishaw, 54 AD2d 1122). While not necessarily limited to such situations, the provision evidently was designed primarily to withhold statutory double jeopardy protection in those situations where the responsible prosecuting authority did not have the opportunity to be heard or to apprise the court of the aggravating facts before a conviction for a mere infraction or lesser misdemeanor was entered.
Thus, it is a principal requirement for the application of CPL 40.30 (2) (b) that the prior prosecution have been procured "without the knowledge of the appropriate prosecutor” (see generally, People v Daby, 56 AD2d 873). In this case, that requirement is simply not satisfied. Although no representative of the Dutchess County District Attorney, the "appropriate prosecutor” (see, id.), was present on October 27, 1987, the date petitioner’s guilty plea was accepted, the District Attorney’s office had actively participated in the traffic infraction prosecution in the Town Justice Court by filing a CPL 710.30 notice and a statement of readiness. Moreover, the District Attorney’s office was represented at the sentencing, the final step in what CPL 40.30 (1) (a) defines as a "prior prosecution” *287 for purposes of the statutory double jeopardy rules (see, People v Snyder, 99 AD2d 83, 85). Accordingly, while petitioner and his counsel may have been less than forthcoming in their dealings with the Town Justice Court at the time that petitioner’s guilty plea was entered, it certainly cannot be said that the traffic infraction prosecution was conducted, or the conviction obtained, without the knowledge of the Dutchess County District Attorney’s office.[5]
Further, whether or not petitioner’s attorney deceived the Town Justice Court, as the dissenter contends, it cannot be said that that the District Attorney’s opportunity to oppose the lenient disposition was lost because of any misconduct by either petitioner or his attorney.[6] Rather, that opportunity *288 was lost, and the Town Justice was left without a reason to reconsider petitioner’s previously entered guilty plea (see, Matter of Lockett v Juviler, 65 NY2d 182, 186-187), because the prosecuting Assistant District Attorney’s admitted lack of familiarity with the details of the case led her to remain silent at the sentencing. Thus, to apply CPL 40.30 (2) (b) here would be to extend it well beyond the intended scope of its coverage. Accordingly, we decline to invoke the statute and thereby override petitioner’s right to be free from successive prosecutions in these circumstances. That conclusion leads us directly to our consideration of the complex statutory and constitutional problems that this appeal presents.
III. Vehicle and Traffic Law § 1800 (d)
Analysis of the rules governing successive prosecutions in cases involving vehicular crimes must begin with Vehicle and Traffic Law § 1800 (d), which provides that a conviction for a violation of any of the Vehicle and Traffic Law’s prohibitions “shall not be a bar to a prosecution for an assault or for a homicide committed by any person in operating a motor vehicle”. Because this is a specific statute obviously enacted for a special purpose, it must be deemed to take precedence over the more general rules for successive prosecutions that are contained in CPL article 40 (see, Matter of Martinis v Supreme Ct., 15 NY2d 240, 249 [plurality opn per Dye, J.]; see also, McKinney’s Cons Laws of NY, Book 1, Statutes § 397). Thus, Vehicle and Traffic Law § 1800 (d) supersedes CPL 40.20 and, to the extent that it does not conflict with constitutional double jeopardy principles, it permits successive prosecution for homicide and assault charges, notwithstanding a prior prosecution for traffic offenses arising out of the same incident (see, CPL 40.20 [2]). Since petitioner was charged with homicide and assault crimes in the first five counts of the chal *289 lenged indictment, Vehicle and Traffic Law § 1800 (d) is directly implicated and we must therefore consider whether that statute may constitutionally be applied in these circumstances.
Our court has previously had occasion to consider the double jeopardy implications of section 1800 (d) (Matter of Martinis v Supreme Ct. (supra). However, the split decision in that case did not definitively resolve the constitutional problem presented by that statute, particularly in light of the evolving nature of the Federal constitutional double jeopardy rule. Accordingly, cases arising under that statute still possess a constitutional dimension, and it is to that dimension that we must now turn.
IV. Federal Double Jeopardy Principles
Our Federal constitutional analysis must begin with Block-burger v United States (284 US 299), in which the Supreme Court discussed what constitutes the "same offense” for purposes of the Federal Double Jeopardy Clause. Under the familiar Blockburger rule, if " 'each [penal] statute requires proof of an additional fact which the other does not/ ” the offenses are not the same and successive prosecution is not forbidden (Brown v Ohio, 432 US 161, quoting Morey v Commonwealth, 108 Mass 433, 434). The Blockburger test "focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial” (Illinois v Vitale, 447 US 410, 416). In essence, to be the "same offense” within the meaning of the Federal Double Jeopardy Clause the crimes must have essentially the same statutory elements or one must be a lesser included offense of the other.
Accordingly, in Illinois v Vitale (supra), the Supreme Court refused to prohibit a reckless manslaughter prosecution that arose out of a traffic incident although the defendant had already been charged with and had pleaded guilty to a traffic infraction ("failure to slow”) arising out of the same incident. The Vitale court stressed that reckless manslaughter did not, as a general rule, require proof of failure to slow and thus was not the "same offense” as failure to slow within the Blockburger analysis. However, the court also went on to note, in pointed dictum, that there would be a "substantial” double jeopardy problem if, on the trial of the manslaughter charge, the prosecution "relies on and proves a failure to slow * * * *290 as the reckless act necessary to prove manslaughter” (447 US, at 421).
This dictum has direct application in this case. Although reckless manslaughter (Penal Law § 125.15 [1]) (count 1), second degree vehicular manslaughter (Penal Law § 125.12) (counts 2 and 3), criminally negligent homicide (Penal Law § 125.10) (count 4) and third degree reckless assault (Penal Law § 120.00 [2]) (count 5) are clearly not the "same offenses” as the traffic offenses to which petitioner previously pleaded guilty, i.e., driving while intoxicated (Vehicle and Traffic Law § 1192 [3]) and failing to keep right (Vehicle and Traffic Law § 1120; see, Illinois v Vitale, supra; Blockburger v United States, supra), the prosecution here has affirmatively stated in its bill of particulars that it intends to use the acts underlying the latter offenses as the major part of its proof on the reckless and negligence elements of the former crimes. This statement of the prosecution’s theory became a part of its pleadings and, until amended, was binding on the People (see, People v Shealy, 51 NY2d 933; People v Barnes, 50 NY2d 375, 379, n 3; see also, People v Grega, 72 NY2d 489, 498). Thus, unlike in Illinois v Vitale (supra), there is no need in this case to await the trial to ascertain whether the prosecution will rely on the prior traffic offenses as the acts necessary to prove the homicide and assault charges. The "substantial” double jeopardy problem identified in Vitale is apparent on the face of the People’s pleadings here. Accordingly, prosecution of the homicide and assault counts in this indictment (counts 1-5) is constitutionally prohibited, and Vehicle and Traffic Law § 1800 (d) cannot constitutionally be applied.[7]
*291 V. Counts 6 and 7
We consider the last two indictment counts separately because the analysis for these counts is different and, in fact, does not require resort to Federal constitutional double jeopardy principles. Since neither count charges a homicide or an assault crime, Vehicle and Traffic Law § 1800 (d) is inapplicable by its terms and, thus, CPL 40.20, the general statutory double jeopardy provision, is controlling.
CPL 40.20 (2) clearly prohibits prosecution of these counts, since they unquestionably arose out of the “same transaction” as the traffic offenses to which petitioner previously pleaded guilty. Further, although not necessary to our holding, we note that these counts charge offenses which are indistinguishable from the misdemeanor to which petitioner previously pleaded guilty and, consequently, prosecution of these counts falls squarely within the constitutional double jeopardy prohibition. Accordingly, prosecution of these counts is now barred.
VI. Conclusion
Notwithstanding the language of Vehicle and Traffic Law § 1800 (d), the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution bars prosecution of the homicide and assault offenses charged in the indictment. The remainder of the indictment charges are barred by our State’s statutory rules governing successive prosecutions. Accordingly, the judgment of the Appellate Division dismissing the petition should be reversed, without costs, the petition granted and further prosecution prohibited.

. The relevant portion of the transcript of the proceedings reads as follows:
"JUDGE: Have you contacted [the] ADA’s office?
"ATTY: Yes. We have received papers. We have also discussed this matter with Mr. Corbin [petitioner].”
In fact, counsel’s only "contact” with the District Attorney’s office was his receipt of ADA Click’s CPL 710.30 notice and statement of readiness.

. Count 2 charged petitioner with negligently causing death while driving with a blood alcohol count of .10% in violation of Vehicle and Traffic *285 Law § 1192 (2). Count 3 charged him with negligently causing death while operating a motor vehicle in an intoxicated condition in violation of Vehicle and Traffic Law § 1192 (3).

. Of course, prohibition lies to restrain violations of both statutory and constitutional double jeopardy rights (see, e.g., Matter of Plummer v Roth-wax, 63 NY2d 243, 249, n 4; Matter of Wiley v Altman, 52 NY2d 410, 412, n 2; Hall v Potoker, 49 NY2d 501, 505, n 1; Matter of Abraham v Justices of N. Y. Supreme Ct., 37 NY2d 560, 564). Further, an aggrieved defendant may seek immediate relief in the form of prohibition even where, as here, he has already made an unsuccessful motion to dismiss in the criminal court in which the challenged indictment is being prosecuted (Matter of Wiley v Altman, supra, at 412-413, n 2).

. We must take issue with the dissenter’s suggestion that we have "imprudent[ly]” reviewed the facts despite a lack of power to do so (dissenting opn, at 292). First, the "affirmed finding of fact” doctrine (see, Cohen and Karger, Powers of the New York Court of Appeals § 111 [rev ed]) has no application here, since the Appellate Division was the court of first instance in this prohibition proceeding. Second, there is no reason to assume that the Appellate Division did, in fact, review the "facts” that were before the *286 County Court on petitioner’s prior motion to dismiss the indictment, since the former court’s dismissal of the proceeding, without opinion, could have been based instead upon its disposition of any number of threshold procedural questions (see, Matter of Forte v Supreme Ct., 48 NY2d 179, 184-185). Finally, even if the Appellate Division had reviewed the facts and even if it had made findings that were binding on this court, we would still be obliged to examine the record to ensure that the findings are at least minimally supported by the evidence (see, Cohen and Karger, op. cit., § 116).

. The dissenter objects to our emphasis on the role assigned to the District Attorney under CPL 40.30 (2) (b) (see, dissenting opn, at 292), but offers no interpretation of his own for the statutory use of the phrase "without the knowledge of the appropriate prosecutor.” Indeed, the dissenter’s formulation of the statute’s reach ("[procurement means engineering your own prosecution and conviction on a lesser crime to avoid full punishment for criminal acts” [dissenting opn, at 292]), as well as his analysis of petitioner’s case, seems to ignore this aspect of the statute entirely. Significantly, the facts in this case do not even satisfy the dissenter’s formulation of evasive engineering, since petitioner did not ask to be charged with the lesser traffic infractions, was not responsible for the change in appearance date which led to the District Attorney’s absence at the plea allocution and, most certainly, did not "engineer” the Town Justice’s ignorance of the facts surrounding his case. If anything, the latter circumstance was "engineered” by the District Attorney’s office, which failed at every possible turn to bring the necessary facts to the Justice Court’s attention.

. We note, however, that, contrary to the dissenter’s contention, petitioner did not "actively [mislead] a Justice of the Peace into believing that no accident occurred, and no one was killed.” (Dissenting opn, at 291). In fact, petitioner made no representations at all, "active” or otherwise, about the occurrence of an accident or the results of that accident. The sole discussion on the record that preceded the formal plea allocution on October 27, 1989 is reproduced in footnote 1 above (majority opn, at 283). As is evident from the quoted colloquy, petitioner’s attorney merely responded, in arguably truthful terms, to a simple question from the Town Justice as to whether counsel had had contact with the District Attorney. Further, the Town Justice’s own hearing testimony negates any possibility that the attorney’s conduct, whether misleading or not, was a causative factor in the lenient disposition petitioner received. The Justice testified that he asked his question specifically to elicit whether counsel "had some kind of letter or documentation from the District Attorney’s office indicating their disposition as to sentencing,” so that he "could have accepted the plea and sentenced [defendant] on that night.” Having learned through counsel’s response that no such documentation existed, the Justice postponed sentencing to give the District Attorney an opportunity to appear. Thus, whatever counsel intended by his terse response, it is apparent that the comment did not *288 persuade the court to take action that was favorable to his client. Further, while counsel may have been less than forthcoming, both at the plea allocution and at the sentencing, and was unquestionably attempting to take advantage of the highly favorable tactical situation created by the prosecutor’s omissions, we are reluctant to characterize his behavior as misconduct, much less to construe CPL 40.30 (2) (b) in such a way as to encompass these circumstances (see, People v Snyder, 99 AD2d 83; cf., People v Dishaw, 54 AD2d 1122). While an attorney may certainly not, directly or indirectly, misrepresent the facts, a practitioner representing a client at a traffic violation prosecution should not be expected to volunteer information that is likely to be highly damaging to his client’s position.

. Even without regard to the analysis in Illinois v Vitale (447 US 410), prosecution of the two second degree vehicular manslaughter counts against petitioner (counts 2 and 3) is prohibited because those crimes are the "same offense” within the meaning of the traditional Blockburger test. Second degree vehicular manslaughter is, in essence, the crime of criminally negligent homicide (see, Penal Law § 125.10), with driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (2) or (3) as an aggravating factor. Thus, driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (3), the offense to which petitioner pleaded guilty, is unquestionably a lesser included offense of second degree vehicular manslaughter, as that crime was charged in count 3 of the indictment, and, accordingly, it is the "same offense” under Blockburger. Further, while count 2 of the indictment charged second degree manslaughter while driving in violation of Vehicle and Traffic Law § 1192 (2), a linguistically different offense from the one to which petitioner pleaded, the proof necessary to establish the "driving while intoxicated” elements of each of these crimes is the same. *291 Consequently, the crimes charged in count 2 should also be considered the "same offense” for purposes of Blockburger.