OPINION OF THE COURT
Jeffrey M. Atlas, J.
The defendant was indicted in 1987 for the murder of Michael Holly. It is the prosecution’s position that the defendant murdered Holly for personal revenge and to carry out the wishes of his cohorts in a notorious gang known as the “Westies”. The defendant now moves to dismiss the indictment claiming that the trial of this indictment should be barred by double jeopardy rules. The defendant bases his motion upon the claim that at an earlier trial of him in the Federal court, brought under the Racketeer Influenced and Corrupt Organization Act (RICO), he was tried and convicted for the same murder.
*862 In the spring of 1987, as a result of an investigation conducted jointly by Federal prosecutors and the prosecutors in this case, the defendant was indicted in the Federal court for racketeering in violation of 18 USC § 1962. In that case the Government charged that the defendant was part of a criminal enterprise known as the "Westies” and that the defendant committed at least two acts of racketeering in furtherance of that enterprise. As an act of racketeering the defendant was alleged to have "willfully, knowingly and unlawfully” murdered Michael Holly. From May through December 1987, along with other indicted "Westies”, the defendant was tried for the crimes alleged in the indictment and ultimately found guilty of the charges. At the time of the submission of the charges to the jury the Presiding Judge directed the jury to return a separate verdict as to the act of racketeering in question. Before rendering its final verdict, the jury reported that it had found the defendant guilty of this charge of murder. The defendant was sentenced to serve a term in prison of 60 years and the sentencing Judge made clear that the sentence was intended as punishment for the crime of racketeering as well as the individual acts of racketeering of which the defendant was found guilty.
It is worth noting that the indictment in this case was not the first to be published involving the death of Holly. A year earlier another New York County indictment attributed the same murder to a different and well-known "Westy”, one Mickey Featherstone. Featherstone was tried and convicted for the homicide. After his conviction, however, Featherstone became a government witness and, claiming his innocence of the Holly murder, he aided the State and Federal prosecutors in a joint investigation of many of his former associates. Amongst the cases in which he gave assistance was the reinvestigation of the murder of Michael Holly. In time the murder conviction of Featherstone was set aside and, with the aid of Featherstone’s testimony, this defendant (along with two others, Kevin Kelly and Kenneth Shannon) was indicted for the Holly death. The defendant was also indicted under the RICO statutes and, again with the aid of Featherstone’s testimony, tried and, as I have noted, convicted upon that indictment.
By this motion the defendant argues that since he has already been tried once for the murder of Michael Holly he should not be tried again for the very same crime. He claims, in other words, that our State laws with respect to double *863 jeopardy prohibit his second prosecution. The People contend however that this second prosecution is permitted. The prosecution relies upon a recent amendment to the Criminal Procedure Law which, in its view, allows the prosecution in our State court of a crime previously prosecuted in the Federal court as an act of racketeering under the RICO statute (CPL 40.50). It also relies upon a recent decision of Justice Gerald Sheindlin in People v Cooper (143 Misc 2d 654 [Sup Ct, Bronx County 1989]) which was, in effect, affirmed by the Appellate Division (Matter of Cooper v Sheindlin, 154 AD2d 288 [1st Dept]). However, for the reasons set forth herein, I agree with the defendant that his motion to dismiss should be granted.
I
To begin with, "[a] person may not be twice prosecuted for the same offense” (CPL 40.20 [1]). It has been said that this subdivision prescribes the double jeopardy doctrine in its purest and simplest form. (Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 40.20 [1971 ed], at 105.) Plainly, our statutory provision is a restatement of constitutional double jeopardy provisions and cannot represent less than that (see, People v Snyder, 241 NY 81, 83 [1925]). Whether these offenses are the "same offense” then will depend upon the meaning that phrase is given by Federal and parallel State decisions interpreting the Double Jeopardy Clause of the US Constitution. Thus, while it is true that in its narrowest sense "the 'same offense’ ” means "the same offense in both fact and law” (Denzer, op. cit., at 105) in its broadest sense it also contemplates offenses not identical to but included within each other. It has been said, " 'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.’ ” (Brown v Ohio, 432 US 161, 166 [1977]; Blockburger v United States, 284 US 299 [1932]; In re Nielsen, 131 US 176 [1889] [which adopted the test from Morey v Commonwealth, 108 Mass 433, 434 (1871)]; Matter of Corbin v Hillery, 74 NY2d 279 [1989].) If each does, then the two are not the same for constitutional purposes. Put somewhat differently "In essence, to be the 'same offense’ within the meaning of the Federal Double Jeopardy Clause the crimes must have essentially the same statutory elements or one must be a lesser included *864 offense of the other” (Matter of Corbin v Hillery, supra, at 289).
As is evident from a continuous line of Federal and State decisions, this test does not call only for a simple comparison of the two statutes involved. Rather, the test of identity "focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial.” (Illinois v Vitale, 447 US 410, 416 [1980].) Thus, if the prosecution’s pleadings make it necessary to prove all the statutory elements of one offense in order to establish the other, then trial of the first offense will effectively bar the trial of the second.
This test may be seen more clearly by examining its application in a line of cases which begins with the recognition that a person convicted of a crime having several elements included in it may not be subsequently tried for a lesser included offense — that is, an offense consisting solely of one or more of the elements of the crime for which he has already been convicted (In re Nielsen, supra). Moreover, a conviction for a lesser included offense will generally bar subsequent trial on the greater offense (Brown v Ohio, supra). In each circumstance the successive prosecutions are for the same offense, since, by statutory definition, proof required for one is required for the other.
What then of the circumstance in which the statutory elements of the greater or inclusive offense do not necessarily require proof of the lesser or included offense? In Harris v Oklahoma (433 US 682 [1977]) a subsequent prosecution for robbery was barred where the accused had already been convicted for felony murder committed by him in the course of the very robbery in issue. While the felony murder statute by its language did not require proof of the robbery, as opposed to any number of other specified underlying felonies, the prosecution’s assertion that it was necessary in that case to prove the robbery made the robbery a "species” of lesser included offense (see, Harris v Oklahoma, supra; Illinois v Vitale, supra, at 420). In other words, the inquiry as to whether two offenses are the same for double jeopardy purposes will not stop at a simple examination of the two statutes involved. In some instances the more inclusive statute may permit the prosecution to prove any number of included offenses but not require proof of any one in particular. More often than not however, the circumstances of the commission of the offense requires, as it did in Harris, the pleading and *865 proof of one particular included offense. When it does, that included offense is treated as the same offense as the greater for double jeopardy purposes. (See, Illinois v Vitale, supra; Matter of Corbin v Hillery, supra [for instances in which the same principle was employed to bar a later prosecution for a greater offense because of the earlier prosecution of a species of lesser offense].)[1]
Applying these principles to the present prosecution it is evident that the District Attorney seeks to prosecute this defendant for an offense for which he has already been tried and convicted. As in the Harris case (supra), the first prosecution of this defendant was based upon a statute which permitted to the prosecution an opportunity to prove any number of underlying crimes as a predicate for establishing a more inclusive crime. The Federal RICO statute provides, in simple terms, that it shall be unlawful for any person associated with an enterprise whose activities affect interstate commerce to participate in that enterprise’s affairs through a pattern of racketeering activity (18 USC § 1962 [c]). Racketeering activity is defined as any act involving any one of eight enumerated crimes, including murder, chargeable under State law or any one of a number of specified crimes under Federal law (18 USC § 1961 [1]). To establish a pattern of racketeering activity the Government must prove at least two separate acts of racketeering activity. (18 USC § 1961 [5].) In this case the prosecution pleaded and was required to prove, as part of the act of racketeering element of the crime, that this defendant committed the murder of Michael Holly, as that act is chargeable under State law. In fact the prosecution did prove that, as evidenced by the jury’s special verdict as to that act, and the defendant’s sentence was fixed to include punishment for the act. Thus the charge of murder here constitutes a "species” of lesser offense included within the Federal RICO charge. Since the charges are, in that respect, substantially identical, this prosecution should be barred (see, People v Lo Cicero, 14 NY2d 374 [1964]; Matter of Brighenti v Judges of N. Y. Supreme Ct, 41 AD2d 209 [2d Dept 1973]).
*866 II
Of course it has been argued by the People that, in any event, principles of dual sovereignty serve to permit this prosecution. That is to say, that the same or identical offense may be prosecuted successively in both the Federal and State courts in view of the constitutional rule that each is to be treated as a separate and distinct offense capable of prosecution in each forum in vindication of the sovereign rights of each governmental entity (see, Bartkus v Illinois, 359 US 121 [1959]). Whatever may be the case from a Federal constitutional perspective, New York, at least by legislation, has long rejected the dual sovereignty rule. Since our first statutes in that regard appeared in 1829 (Rev Stat of NY, part IV, ch I, tit I, § 7; tit VII, § 5) New York has enacted laws which, in even more comprehensive form, reject the principles of dual sovereignty (Code Grim Pro § 139; former Penal Law § 33 [which, of course, have been replaced by CPL 40.20, 40.30). Indeed, even in the absence of such legislation our court has noted the inherent inequity of such double prosecutions (see, People v Welch, 141 NY 266, 280 [1894]) and, to the extent that such legislation has been unclear, we have rejected the doctrine by construing that legislation as abolishing dual sovereignty to avoid "constitutional doubts” about the rule (People v Lo Cicero, supra, at 378). Considering the prosecution’s reliance on the doctrine, it is also worth mentioning that, notwithstanding a popular misconception that the doctrine is part of our State Constitution, "[p]rior to the advent of the Criminal Procedure Law, it was unclear whether New York recognized the dual sovereignties doctrine” (Matter of Abraham v Justices of N. Y. Supreme Ct., 37 NY2d 560, 565 [1975]). In fact, our court has gone out of its way to say that, in view of the statutory nullification of the doctrine, it has had no occasion to determine if dual sovereignty is an acceptable caveat to the double jeopardy provisions of the New York Constitution (see, Matter of Wiley v Altman, 52 NY2d 410, 413, n 4 [1981]). It is clear then that our legislation with respect to the dual sovereignty doctrine serves to prohibit this successive identical prosecution unless, in some other respect, that same legislation expressly permits this kind of prosecution under some stated exception.
III
This leads me then to some comment on the impact that CPL 40.20 (2) might have on the problem here. It is under a subdivision of this section that Justice Sheindlin, in a case *867 quite like this, permitted the second State prosecution after an earlier Federal RICO prosecution. (See, People v Cooper, supra; Matter of Cooper v Sheindlin, supra.)
To begin with, I am of the view that subdivision (2) of section 40.20 is inapplicable in this circumstance. Our courts have repeatedly said that when offenses are the same or identical in a constitutional sense, section 40.20 (1) serves to bar the second prosecution (Matter of Abraham v Justices of N. Y. Supreme Ct., supra, at 565). The second subdivision of section 40.20 was written, not to alter the meaning of the first but, to extend the double jeopardy bar beyond that ordinarily required by the Constitution. Under the second subdivision double jeopardy protection is extended, beyond the same or identical offenses, to different offenses arising out of a common event or based upon the same act or criminal transaction. (Matter of Wiley v Altman, supra, at 413; People v Abbamonte, 43 NY2d 74, 81 [1977].) Aware of the pitfalls in too broad a rule the Legislature also established certain exceptions to the second subdivision to limit the application of the extended double jeopardy rule (Matter of Abraham v Justices of N. Y. Supreme Ct., supra). In view of the fact that the two offenses here are the "same”, and barred under the most basic statutory rule, it is wholly inappropriate to analyze the issue by use of statutory exceptions to an extended double jeopardy rule that apply only to different offenses arising from the same occurrence or criminal transaction.
In People v Cooper (supra), Justice Sheindlin’s analysis of the problem concerned itself solely with the impact of subdivision (2) (b) of section 40.20 upon the question. Section 40.20 (2) (b) provides that a person may not be separately prosecuted for two offenses based upon the same act or criminal transaction unless each of the offenses as defined contains an element which is not an element of the other, and the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil. Justice Sheindlin concluded that the RICO statute and our murder statute each contain an element which is not an element of the other and that each is designed to prevent a very different kind of harm or evil. It is apparent from Justice Sheindlin’s opinion that section 40.20 (2) (b) was advanced as reason to deny the defendant’s motion and that he was not called upon to consider how section 40.20 (1) might affect the result. Moreover, the Appellate Division’s approval of his decision was, in my view, merely an endorsement of his comparison, made under subdivision (2) (b), of the *868 two conflicting offenses as they are defined by their respective statutes. It is apparent that the Appellate Division also was not called upon to consider the effect of the language of subdivision (1) of CPL 40.20 for at no point did it examine the problem by use of the well-established tests which must be applied under subdivision (l).[2]
Finally, I must address the argument made by the prosecution that this second prosecution is specifically permitted by additions to the law which were part of the Organized Crime Control Act of 1986 (L 1986, ch 516). Upon the passage of our State’s enterprise corruption laws, portions of CPL article 40 were amended to deal with the complex double jeopardy problems engendered by that new law. Amongst the additions to article 40, section 40.50 (9) was added to provide that: "9. A person who has been previously prosecuted for racketeering pursuant to federal law, or any comparable offense pursuant to the law of another state may not be subsequently prosecuted for enterprise corruption based upon a pattern of criminal activity that specifically includes a criminal act that was also specifically included in the pattern of racketeering activity upon which the prior charge of racketeering was based provided, however, that this section shall not be construed to prohibit the subsequent prosecution of any other offense specifically included in or otherwise part of a pattern of racketeering activity alleged in any such prior prosecution for racketeering or other comparable offense. ” (Emphasis added.)
It is argued that this provision serves, when read in conjunction with CPL 40.20 (2), to permit this second prosecution for an offense which was alleged in the prior prosecution as racketeering activity. As part of the comprehensive changes to article 40 made in 1986 paragraph (h) was added to CPL 40.20 (2) to provide that:
*869 "2. A person may not be separately prosecuted for two offenses based upon the same act or criminal transaction unless * * *
"(h) One of such offenses is enterprise corruption in violation of section 460.20 of the penal law, racketeering in violation of federal law or any comparable offense pursuant to the law of another state and separate or subsequent prosecution is not barred by section 40.50 of this article.”
It is plainly true that nothing said in section 40.50 bars the prosecution of this State indictment. In fact, section 40.50 is silent on the subject and therefore it may be argued that subsequent prosecution is not barred under section 40.20 (2) (h). However, I am again compelled to note that these amendments apply only when confronted with separate prosecutions for two different offenses based upon the same act or criminal transaction. The inclusion by reference of the terms of section 40.50 into section 40.20 (2) or for that matter the addition of paragraph (h) to CPL 40.20 (2) by ordinary rules of statutory construction cannot constitute an amendment to the first subdivision of section 40.20. Nor, in my view, can it be argued, without raising issues of enormous magnitude under the State Constitution, that these additions affect the application of a basic double jeopardy rule in operation throughout the entire history of our State.
Finally, in the event that I must account for section 40.50 as a measure independent of section 40.20 (2), I must note that in no way am I violating that section by this decision. Nothing in that section expressly permits this prosecution and in no way am I construing any of the language of CPL 40.50 to prohibit this second prosecution (see, CPL 40.50 [9]). In no way have I relied on the section for I have resolved that the section is wholly inapplicable here.
The defendant’s motion to dismiss the indictment is, therefore, granted.

. Actually, Illinois v Vitale (447 US 410, 421) held only that if, on remand, Illinois relied on and was required to prove the lesser offense to establish the greater then Vitale would have "a substantial claim of double jeopardy”. In Matter of Corbin v Hillery (74 NY2d 279), the Court of Appeals found such reliance by the State to work a bar to the second prosecution. The Supreme Court has now granted certiorari in Corbin to review a principle it had no opportunity to finally adjudicate in Vitale.

. With all due deference to the Appellate Division’s decision, I believe that reasonable arguments will not abate that the RICO statute, by its language, does contain, albeit by reference, all the elements of murder as it is defined in our State law. Such troubling arguments are encouraged by the inequity inherent in multiple prosecutions made possible by the sweeping and increasingly popular use (in matters far less grievous than murder) of racketeering statutes in various jurisdictions. It is a remarkable coincidence that such arguments are totally avoided and basic fairness maintained by the application of the constitutional decisions to which I earlier referred. Moreover, if Justice Sheindlin’s analysis accurately reflects the Legislature’s view of this problem, then one must ask why the Legislature found it necessary in 1986 to add paragraph (h) to section 40.20 (2).