*101 OPINION OF THE COURT
John Manning Regan, J.
These three defendants have all pleaded not guilty to the charge of criminal mischief, fourth degree (Penal Law § 145.00 [3]). The charge accuses each defendant of recklessly damaging another person’s property in a sum exceeding $250. Conviction on this class A misdemeanor carries a maximum penalty of six months’ imprisonment. (Penal Law § 70.15.)
This court arraigned these defendants on July 25, 1990. The misdemeanor complaint, filed by Officer Raymond Slattery, has attached to it copies of sworn statements from each of the three defendants. These statements provide a synoptic assemblage of undisputed facts upon which these charges of criminal mischief rest.
Because these undisputed facts compel the legal conclusion that further prosecution of these cases as misdemeanors grievously flouts the interests of justice, this court, upon its own motion, has decided to dismiss these charges, under the provisions of CPL 170.40, without prejudice to presentation of the cases before a Grand Jury.
I. FACTS OF THE CASE
In the early morning hours of June 28, 1990, defendants Meagher and Rotondo left their place of employment and went at once to a 7-11 convenience store to buy a case of beer. Then they left the store and drove to Charlotte beach park on Lake Ontario where, around 1:00 a.m., they met up with defendant Todd Hart, also a coemployee. All of these men were drinking beer and engaging in other frivolities during this warm summer night. Eventually, the three decided to walk out on the fishing pier which extends one-quarter mile or so into the lake. Partway down the pier, the trio came across a wire cable, approximately IV2 inches in diameter. Meagher, in his statement, then says: "I think it was my idea to tie the cable across the pier.” Regardless, all the men participated thereafter in wrapping the cable around metal stanchions which lined either side of the pier so that the cable was stretched across the pier at a substantial vertical distance (6 inches or more) above the surface level of the roadway. The defendants then continued their trek to the end of the pier.
Some time passed as the defendants continued to drink beer and to wile away the nighttime. Defendants Hart and Meagher then noticed a man with a Nissan pickup truck at *102 the lakeside end of the pier. They recognized him from a prior incident at the park, when he had gotten his truck caught in the soft sand. Other persons in the vicinity told all the defendants at this time that the truck owner intended to drive his vehicle back down the pier. Hart and Meagher told them, but not the driver, about the cable they had stretched across the roadway.
About 45 minutes later, the driver John C. Spackman, got into his truck and, at a rapidly increasing rate of speed, drove off down the pier. His vehicle struck the cable and the impact of the collision killed him. Hart had left shortly before this happened. Rotondo and Meagher, however, saw the truck leave, and then come to an abrupt halt on the pier where the cable was: "[We] could see the truck’s taillights moving up and down”, they said in their statements.
Ten minutes later, they walked down to the truck and discovered Spackman’s body. Rotondo touched him on the arm, and saw blood, but could not revive him. Although the defendants knew of this collision, and the probable condition of Spackman, they both thereafter went to the parking lot on the beach, retrieved their cars and drove them. Others at the scene sought help, and summoned the police.
II. LEGAL ANALYSIS
A. These Facts Command Felony Prosecution
Section 125.00 of the Penal Law categorizes homicide offenses in New York. It defines homicide as "conduct which causes the death of a person.”
Two article 125 felony statutes clearly apply to this event. The first is section 125.10 which provides: "A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person.” The second is section 125.15 which provides: "A person is guilty of manslaughter in the second degree when: 1. He recklessly causes the death of another person.”
Moreover, article 120 of the Penal Law entitled "Assault and Related Offenses” contains a third felony statute potentially applicable to these defendants’ conduct. Section 120.25 states: "A person is guilty of reckless endangerment in the first degree, when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person.”
*103 Manslaughter, second degree, is a class C felony, reckless endangerment, first degree, is a class D felony, and criminally negligent homicide is a class E felony.
In this case, the act of stretching a wire cable in an elevated position across the pier’s roadway, in the darkness of the nighttime, knowing that both pedestrians and motor vehicles were traveling the pier’s roadway at the time, and failing to warn a specific motor vehicle operator of the cable’s location, manifestly, may constitute either: (1) criminal negligence or (2) criminal recklessness and/or (3) circumstances evincing a depraved indifference to human life, or all three of those elements.
And the defendants’ consumption of alcoholic beverages —even inducing a state of intoxication — is not a defense, unless it tends to disprove an element of these crimes.[1]
B. Misdemeanor Prosecution
The cardinal material fact in this criminal case is the homicide which occurred as a result of the collision of the pickup truck with the wire cable. An incidental fact is also necessarily present — damage to the truck.
What is profoundly obvious, however, is that the same operative group of facts — that is, the alleged recklessness of these defendants — caused both the homicide and the physical damage to the truck, simultaneously. That same operative group of facts — stretching the cable across the pier’s roadway in the nighttime, with knowledge of the use of the roadway by vehicles and pedestrians at the time, and failing to warn a specific motor vehicle operator of the danger — will constitute the People’s proof of defendants’ recklessness for this misde *104 meanor charge of criminal mischief, fourth degree, and would likewise constitute the People’s proof of recklessness in any of the felony prosecutions available. In other words, if the defendants’ recklessness caused the property damage, it also caused the homicide, because the same set of factors caused both at once.
Despite this glaring identity in the nature of the proof, the prosecutor has chosen to charge the defendants with a crime pertaining only to the property damage, but not to the homicide.
Since the property damage to the truck could not have happened unless the truck driver drove the truck into the cable, and since that single event caused both the property damage and the homicide, this decision, to prosecute for the one, but not for the other, is chimerical, irrational, and indefensible, and creates substantial legal problems.[2]
C. Felony Prosecution is a Decision

Solely Within the Discretion of the District Attorney

In New York, the county office of District Attorney is constitutionally compelled for every county in the State. (NY Const, art XIII, § 13 [a].) The duties of the office, however, are entirely statutory. (County Law §§ 700-706.)
Notwithstanding the unequivocal mandatory language of County Law § 700 — "It shall be the duty of every district attorney to conduct all prosecutions for crimes * * * cognizable by the courts of the county for which he shall have been elected” — case law interpretation of this statutory language (with a long common-law tradition underpinning that interpretation), has established the doctrine of prosecutorial discretion in respect to decisions on prosecution of offenders. (People v Di Falco, 44 NY2d 482 [1978]; People v Muka, 72 AD2d 649 [3d Dept 1979].) Accordingly, the District Attorney has sole and unreviewable discretion to decide whether he shall prosecute a defendant, and for what crimes he shall prosecute.
The question this case presents (and the presentation is both unique and dramatic) is whether a District Attorney’s decision to prosecute for a misdemeanor when the facts overwhelmingly indicate that only a felony prosecution is adequate to satisfy the interests of justice, binds the judiciary, *105 and compels the collaboration of the courts. Or, alternatively, may a court, in the exercise of an equally unfettered judicial discretion, choose not to participate in an activity so repugnant to the ideals of the administration of justice.
This is a question of first impression, but after a review of the statutory history of CPL 170.40, this court has concluded that the law permits the judiciary to withhold both its cooperation and its complicity in so deplorable a situation as this case presents.
III. DISMISSAL IN THE INTEREST OF JUSTICE
CPL 170.40 obliges a court to consider a variety of factors when it dismisses a misdemeanor complaint in the interest of justice, and further obliges the court to "set forth its reasons therefor upon the record”. (CPL 170.40 [2].)[3] The list of factors to be considered is relatively new, originating in Laws of 1979 (ch 216). The duty to put the reasons on the record is much older, originating in the former Code of Criminal Procedure around 1850. (See, Code Crim Pro § 671, as amended by L 1927, ch 596.)[4] The court must find in this litany of factors a compelling circumstance demonstrating that either conviction, or prosecution, of the defendant would constitute injustice. (CPL 170.40 [1].)
The assumption has usually been made, however, that the injustice which this statute condemns is injustice to the defendant(s). This case contains no such proclivity. The injustice in this case, were the court to permit prosecution, would fall upon the victim, John Spackman, as it would deprive him of the protection of the police power of the State. Although Spackman, individually, is now beyond that protection, his death represents an all too frequent occurrence in today’s society, and for that reason alone, criminal prosecution is strongly indicated for the protection of innocent others, similar to Spackman, and for the deterrence of the reckless few, similar to these defendants.
Moreover, there is nothing in the plain language of this *106 statute inconsistent with considerations of injustice to the victim. CPL 170.40 (1) (i) allows the court to consult "the attitude of the * * * victim” as a factor in its decision. Governor Carey, in approving the 1979 legislation, pointed out that "harm to the victim” was included in the court’s weighing of both (1) the public interest, and (2) the interest of the defendant. His segregating the interests of the public from the interests of the defendant also militates in favor of such an interpretation.[5]
Additionally, both the Judicial Conference and the Office of Court Administration sponsored the 1979 statute. In their message of support to the Legislature, those agencies remarked that the statutory factors "encompass[ed] the offense, the defendant, the complainant and the community.” Certainly, this unimpeachable hermeneutical source deserves the respect and support of the judiciary.[6] Furthermore, the breadth of their interpretation fortifies the legal conclusion that injustice to the victim, and his representatives within the community, just as much as injustice to the defendant(s), authorizes a dismissal in the interest of justice.[7]
Finally, it is fair to mention that both these agencies were aware that the criminal justice system had, for too many years, disregarded the rights of victims, and that, in 1979, these statutes were intended, at least in part, to correct that wrong.
A. The compelling factor here is double jeopardy and the impact of that doctrine upon the public confidence in the administration of justice.
In Matter of Corbin v Hillery (74 NY2d 279 [1989]) our Court of Appeals both reviewed and clarified the double jeopardy doctrine as courts are to apply it in New York. The Hillery case analyzed four statutory provisions, as set out in *107 CPL article 40, prohibiting subsequent prosecutions for the same offense, and accurately confined the import of those statutes to the Federal constitutional limitations the Supreme Court had imposed in Illinois v Vitale (447 US 410 [1980]).[8]
In sum, the Hillery decision (supra) recognizes that if the People, in order to establish guilt in a prior prosecution, had relied on the same items of evidence as they will have to rely on to prove essential elements of any subsequent charge, that there can be no second prosecution, as that would punish a defendant twice for the same acts. In Hillery the People, in order to prove the felonies of reckless manslaughter (Penal Law § 125.15), vehicular manslaughter, and criminally negligent homicide (Penal Law §§ 125.12, 125.10), admitted in their bill of particulars that they intended to prove defendant’s drunkenness, and his failure to keep right, as evidence of his recklessness and negligence. Since the defendant had already pleaded guilty and been sentenced for the misdemeanors of driving while intoxicated and failure to keep right, future use of those same facts to prove an essential element of the second felony crime was barred as double jeopardy.
Exactly the same circumstances obtain here. The same series of acts will constitute the defendants’ recklessness in the misdemeanor prosecution for criminal mischief under subdivision (3) of section 145.00 of the Penal Law, as will constitute the defendants’ recklessness in the felony prosecution(s) for manslaughter, second degree (Penal Law § 125.15), or reckless *108 endangerment, first degree (Penal Law § 120.25), or the defendants’ criminal negligence in a felony prosecution for criminally negligent homicide (Penal Law § 125.10). The doctrine of double jeopardy allows only one prosecution, and only one punishment, for that behavior, and if the defendants are convicted and sentenced here for the misdemeanor of recklessly damaging property, no further prosecution will lie for those acts no matter what other injury or damage they may have caused.[9]
Needless to say, similar principles apply if the defendants were to be acquitted of recklessness in this misdemeanor prosecution. An acquittal would bar any further litigation on the question of defendants’ recklessness for all time. (Matter of Martinis v Supreme Ct., 15 NY2d 240 [1965].)
Thus, in either eventuality, conviction or acquittal, prosecution for the misdemeanor in this court will effectively preclude any felony prosecution of these defendants at a later time.
Returning then to a consideration of the criteria the court must examine in order to dismiss a case in the interest of justice, the standards which merit closest scrutiny are the impact of a dismissal on the confidence of the public in the criminal justice system, the safety of the community, and both the seriousness and extent of the harm caused by the offense. (CPL 170.40 [1] [a], [b], [g], [h].) These factors, combined with the injustice to the victim previously recounted, have persuaded this court that prosecution and punishment here for recklessly damaging property is tantamount to a public scandal. Not only does it jeopardize the safety of the community because it treats property damage as more serious than human life, it also tends mightily to destroy public confidence in our system of justice since it trivializes the death of Spackman and, in effect, condones the criminal recklessness which killed him.
B. Misdemeanor criminal prosecution and sentencing serve little purpose.
Of lesser importance, but persuasive nonetheless, are the statutory criteria which invoke the "purpose and effect” of imposing of criminal sentence on the defendants.[10] Rarely will *109 a criminal conviction for reckless property damage give greater public satisfaction than the financial compensation a civil damage suit also provides. The heart of any property damage suit is monetary restitution. Adequate compensation for property damage loss is the measure of justice in both civil and criminal cases. Both accomplish the same thing. Since the purpose and effect of a criminal prosecution for reckless criminal mischief would be a sentence of restitution, and since a civil judgment would supply the same remedy, criminal sentencing in these cases, should a conviction result, would not appreciably amplify a civil judgment. The court, in fairness, could not, at criminal sentencing, take the homicide into consideration as that circumstance would not have been part of the case for the prosecution on a charge of criminal mischief.
There is, therefore, no significant purpose served in pursing a criminal conviction, as contrasted with a civil judgment, in this case.
IV. ANCILLARY MATTERS
In the wake of this court’s announcement that a dismissal in the interest of justice was in progress on the court’s own motion,[11] the People moved for the court’s recusal, or alternatively, for a Clayton hearing.[12]
Taking these motions up in reverse order, the court observes that the Clayton holding pertains to dismissals of indictments, and to the statutory procedures which parties and courts must follow on all such motions to dismiss. (CPL 210.45.) These same procedures apply as well to similar motions made in misdemeanor cases (CPL 170.45). Both statute(s) allow for the motion to be granted, without a hearing, whenever the allegations of fact are conclusively substantiated by documentary proof.
In this case, for purposes of this motion only, the court has accepted as true the written statements each of the defendants have signed and sworn to before Officer Raymond *110 Slattery. That is not to imply that the court regards the truth or the admissibility of those statements as having been established as if upon a trial of the case. What the court does accept is the validity of the statements in the sense that they are all genuine, not forgeries or concoctions. In this court’s judgment, such is the threshold of probable cause, that from a reading of these statements and the facts contained therein,[13] the legal conclusion is inescapable that felony, rather than misdemeanor, prosecution is the only course of action which can do justice in this case. Accordingly, no hearing is required because documentary evidence has substantiated the material facts.
The motion to recuse is entirely inappropriate. Such motions lie where a Judge is a party, or has a pecuniary or familial interest in the outcome of the case (Judiciary Law § 14), or where the Judge cannot overcome a bias or prejudice against a party or witness. They have no place where, as here, there is a bona fide disagreement on questions of law and on what is the proper legal procedure to follow. (People v Smith, 63 NY2d 41, 68 [1984].)
Accordingly, both motions are denied.
As noted above, this court cannot, and does not, order the District Attorney to commence a felony prosecution. The court does, however, order this case dismissed in the interest of justice; such dismissal is with prejudice to any misdemeanor refiling in this court based upon the same events as recited herein, but is without prejudice to the presentation of the case to a Grand Jury, and to any subsequent proceedings thereon.

. [2] Penal Law § 15.25 says: "Intoxication is not, as such, a defense to a criminal charge; but in any prosecution for an offense, evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negative an element of the crime charged.” In this case, intoxication could conceivably affect the degree of these defendants’ conscious awareness of the risk their conduct created. But under no interpretation of the facts, as presented in their statements, could the degree be lower than criminal negligence. Intoxication could mitigate only against the elements of criminal recklessness, or depraved indifference.
In most criminal prosecutions, the mental state of the defendant is critically important. In this case, neither the misdemeanor, nor the felonies, involve intentional conduct. But there are gradations of guilt and criminal responsibility among intentional, reckless, and negligent acts. Drunkenness can lessen the conscious state of mind, and affect intent and recklessness. But drunkenness is itself a form of culpable negligence.

. The primary problem is with constitutional double jeopardy, and those implications will be discussed further along in this opinion.

. The Court of Appeals in People v Belge (41 NY2d 60 [1976]) suggested legislative revision of CPL 210.40 (the corresponding dismissal statute for indictments) to incorporate specific standards of judgment a court must apply in granting a motion to dismiss in the interest of justice. In 1979, the Legislature acted on the suggestion, and passed the current law, which sets forth 10 criteria to which the court must refer.

. People v Belge, 41 NY2d 60, 63 (dissenting opn per Jasen, J.).

. Cf., Message from Governor, upon approving L 1979, ch 216, dated June 11,1979, 1979 McKinney’s Session Laws of NY, at 1775.

. Cf., Mem of Office of Court Administration, 1979 McKinney’s Session Laws of NY, at 1879.

. The Bill Jacket from Governor Carey’s office also contains a letter from the Crime Victims Compensation Board. The Board’s counsel at the time, Paul S. Hudson, comments to the Governor on Laws of 1979 (ch 216) as follows: "The criteria in this legislation should be helpful in preventing miscarriages of justice from the viewpoint of the crime victim as well as that of the defense or prosecution.” This court concurs.

. William Grady, District Attorney of Dutchess County, appealed the Hillery case to the United States Supreme Court. On May 29, 1990, in an opinion by Justice Brennan, that court affirmed the New York Court of Appeals. (Grady v Corbin, 495 US 508,109 L Ed 2d 548.) Four Justices dissented, two of whom joined an opinion by Justice Scalia which severely criticized the court’s majority for adopting Justice Brennan’s "same transaction” theory of double jeopardy. (See, Grady v Corbin, 495 US, at —, 109 L Ed 2d, at 578.)
The dissenters insist that "double jeopardy” means, in the words of the Constitution, that the State cannot punish twice for the same offense. So long as the second offense contains any element(s) not contained in the offense which was the subject of the first prosecution, there is no double jeopardy issue. Because the element of homicide was not present in the first prosecutions in Hillery and the first prosecution here, the dissenters would reverse Hillery and would find no double jeopardy problem there, nor would they find a double jeopardy problem here in this case.
Justice Brennan and the majority, however, adopt the analysis that double jeopardy does preclude a second prosecution whenever a defendant has already been convicted and punished for any acts which constitute essential elements of the second offense. Their judgment affirms the New York Court of Appeals judgment in Hillery, and also affirms the existence of the double jeopardy problem in this case.

. Cf., Matter of Brighenti v Judges of N. Y. Supreme Ct., 41 AD2d 209 (2d Dept 1973).

. CPL 170.40 (1) (f).

. Under CPL 170.40 (2), the court itself may move a dismissal in the interest of justice. Such a procedure is particularly apposite here where none of the parties has reason to make such a motion, and where the real party in interest — the victim — is dead.

. Under People v Clayton (41 AD2d 204 [2d Dept 1973]), a fact-finding hearing is sometimes a prerequisite to granting a motion to dismiss in the interest of justice.

. The facts in these statements — on this motion — bind both the People, who have offered the statements in support of the charge of reckless criminal mischief, and the defendants themselves, who have signed them.