[603 NYS2d 591]

In the Matter of ERNEST R. CANTAVE, Petitioner, v SUPREME
COURT OF THE STATE OF NEW YORK et al., Respondents.

Third Department, November 4, 1993

### APPEARANCES OF COUNSEL

*Fernande Rossetti,* Albany, for petitioner.

*Sol Greenberg, District Attorney* of Albany County *(Michael G. Gaynor* of counsel), for Supreme Court of State of New York, respondent.

### OPINION OF THE COURT

MAHONEY, J.

From May 1989 until May 1991, petitioner and two others participated in a check-kiting scheme in various cities across the country including the City of Albany. Briefly, the scheme involved obtaining State identification cards using assumed names, obtaining the Social Security number of the individuals whose names were assumed and using that information to open checking accounts at local banks. Business checks were ordered on the account and when received were filled out to appear as payroll checks payable to the assumed identities. Petitioner and his accomplices then cashed the checks at grocery and convenience stores over a weekend in each city. By the time they were caught by Federal officials in Ohio, they had netted $194,000 from the scheme.

In September 1991, a Federal prosecutor for the Southern District of Ohio filed a two-count information against petitioner, charging him with making counterfeit securities (18 USC § 513 [a]) and using false Social Security numbers (42 USC § 408 [a] [7] [B]). Ultimately, petitioner pleaded guilty to both charges. As part of the plea agreement, the Federal prosecutor obtained nonprosecution agreements from Federal prosecutors in other Federal districts where petitioner had carried out the scheme, including the United States Attorney

for the Northern District of New York. The agreements were given in return for inclusion of petitioner's conduct in those districts as "relevant conduct" under the Federal sentencing guidelines, which would operate to increase the severity of the sentence to be imposed on his plea to the Ohio charges. In this regard, the plea agreement provided: "The parties agree that under the [Federal] Sentencing Guidelines the base offense level for the offenses to which [petitioner] agrees to plead guilty is level 14 because the loss is $194,000, which consists of [petitioner's] relevant conduct resulting in loss in nine other federal districts in which the scheme succeeded before it was attempted in Cincinnati, Ohio. That relevant conduct is described in the Statement of Facts and Summary which are attached and incorporated herein."* While petitioner ultimately was sentenced in the United States District Court for the Southern District of Ohio, it is not clear from the record whether the sentencing court sentenced him in accord with the plea agreement or, if not, whether and how the court figured petitioner's Albany conduct into the sentence imposed.

In February 1992, while petitioner was still serving his Federal sentence, he was indicted by an Albany County Grand Jury on one count of scheming to defraud in the first degree and four counts of criminal possession of a forged instrument. With regard to the latter charges, the indictment alleged that on three occasions on March 5, 1991 and one occasion on March 28, 1991, petitioner cashed several forged checks at various local supermarkets. Thereafter, petitioner moved to dismiss the indictment on, *inter alia,* double jeopardy grounds. While the precise basis for the alleged double jeopardy violation urged before Supreme Court is unclear from this record as the motion papers are not contained therein, it is apparent from a reading of the court's decision that it construed petitioner's arguments as limited to whether the Federal proceedings constituted a previous prosecution for the same offense under CPL 40.20. Concluding that petitioner was not previously prosecuted for the offenses charged in the Albany County indictment, the court denied the motion, prompting petitioner to commence the instant CPLR article 78 proceeding.

We agree that petitioner's motion should have been denied,

---

* The "Statement of Facts and Summary" includes two instances in Albany between January 1990 and March 1991, netting $20,000 on each occasion.

but for reasons other than those stated by Supreme Court. It is now clear that the Double Jeopardy Clauses of the State and Federal Constitutions encompass three separate guarantees. They protect against (1) a second prosecution for the same offense after an acquittal, (2) a second prosecution for the same offense after conviction and (3) multiple punishment for the same offense (US Const 5th, 14th Amends; NY Const, art I, § 6; *North Carolina v Pearce,* 395 US 711, 717; *Matter of Johnson v Morgenthau,* 69 NY2d 148, 150; *People v Prescott,* 66 NY2d 216, 221, *cert denied* 475 US 1150). While petitioner concedes in his brief that the charges contained in the Albany County indictment were not included in the Federal information to which he pleaded guilty, with the result that the first two guarantees are not implicated, he urges in his petition that because the offenses encompassed in the Albany County indictment were used in the prior Federal proceeding to increase petitioner's offense level under the Federal sentencing guidelines and thus increased the length of his sentence, his prosecution under the Albany County indictment runs afoul of the third guarantee noted above, namely, the guarantee against multiple punishments for the same offense. Supreme Court did not address this issue.

For the reasons that follow, we find petitioner's arguments unpersuasive. As previously noted, the multiple punishment guarantee prohibits only multiple punishments *for the same offense.* Here, the Albany conduct, as recited in the "Statement of Facts and Summary" accompanying the plea agreement, did not give rise to any charged offense. Moreover, there is absolutely nothing in the record to indicate that this uncharged conduct, if charged, would result in a Federal indictment for offense(s) which would be the same as those contained in the Albany County indictment *(cf., United States v McCormick,* 992 F2d 437; *United States v Garcia,* 919 F2d 881). In this regard, it is also not without significance that the record is bereft of all but speculation that petitioner's Albany conduct, which supposedly was included in increasing his sentence on the Ohio plea, was the same conduct that gave rise to the Albany County indictment. The statement of facts accompanying the plea agreement notes simply that petitioner engaged in a check-kiting scheme on two occasions in "Albany" between January 1990 and March 1991, netting $20,000 on each occasion. There is absolutely nothing establishing that the charges in the Albany County indictment were even part

of this scheme or, if they were, whether they were one of the two indicated therein.

In any event, even assuming, arguendo, that the offenses alleged in the Albany County indictment and the uncharged Albany conduct recited in the statement of facts appended to the plea agreement could be considered to be the same under prevailing analysis *(see, Blockburger v United States,* 284 US 299; *Matter of Corbin v Hillery,* 74 NY2d 279, 289, *affd sub nom. Grady v Corbin,* 495 US 508; *People v Prescott, supra,* at 221), petitioner has failed to satisfy his burden of proving that the Albany conduct actually was considered by the sentencing Judge in the Federal District Court for the Southern District of Ohio in increasing petitioner's offense level on the Ohio charges *(cf., Matter of Auer v Smith,* 77 AD2d 172, 181, *appeal dismissed* 52 NY2d 1070). While incorporation of the Albany conduct was contemplated in the plea agreement and was recommended in the presentence report, the sentencing minutes are not contained in the record and there is no other indication that the sentencing Judge actually sentenced petitioner in accord with these recommendations.

YESAWICH JR., J. P., CREW III, WHITE and CASEY, JJ., concur.

Adjudged that the petition is dismissed, without costs.