COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO. 2-05-170-CR

 

 

HUNTER
MICHAEL DAVENPORT                                             APPELLANT

 

                                                   V.

 

THE STATE
OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. Introduction








Appellant Hunter Michael Davenport appeals his
conviction for two counts of aggravated sexual assault of a child.  The jury found Davenport guilty of both
counts and assessed his punishment at thirty-two years=
confinement and a $10,000 fine for Count One and thirty-two years=
confinement for Count Two.  The trial
court sentenced him accordingly, with the sentences to be served
concurrently.  Thomas raises five issues
on appeal.  We will affirm.

II.  Factual and Procedural Background

Davenport married Crystal in 1997.  At the time, Crystal had two daughters, A.S.
and K.S.  Davenport took on the role of
stepfather to Crystal=s two daughters.  The couple had one child, H.D., together in
1998.  When A.S. was eleven years old,
Davenport told A.S. that she needed to learn how to defend herself.  He said that if anyone came into the house
and tried to rape her, she should know how to untie herself in order to get
away.  Davenport said she should practice
untying herself while naked because she would probably be naked if someone came
into the house.  A.S. took off all her
clothes except her panties, and Davenport tied her to the chair and timed her
untying the rope. Davenport also Apushed
himself up against [A.S.] . . . to make sure [she] knew what to do.@ 








Over time, Davenport developed a strong bond with
A.S. and became the Acool dad.@  He would give A.S. cigarettes and
alcohol.  Davenport began using alcohol
as a reward for a hug or a kiss.  The
kissing became more intimate, Atouching
came along@ with it, and Davenport began
frequently making out with A.S.  When she
was twelve, Davenport had sex with her for the first time.  Davenport began having sex with A.S. on a
regular basis.  Crystal had suspected
something was going on between Davenport and A.S., but every time she
confronted them, they denied it.  Around
March of 2003, A.S. discovered she was pregnant.  She told Crystal that the father was a boy at
her school named Arsenio, although A.S. and Davenport thought that Davenport
was the father.  It was later discovered
that another boy was the father.   Crystal
and Davenport separated around the time that A.S.=s baby
was born, but Davenport continued to keep A.S., K.S., and H.D. every other
weekend.  On February 7, 2004, while the
children were with Davenport, Crystal=s friend
told her that she had seen Davenport kissing A.S. in his truck. Crystal called
Davenport and demanded that Davenport submit to a paternity test.[2]  He concocted a story that he put his semen in
a syringe and that A.S. used the syringe to artificially inseminate herself
because she wanted a baby and threatened to call Child Protective Services if
he did not impregnate her. Davenport and A.S. told this story to the police and
to Crystal, but A.S. eventually told the police that she and Davenport had a
sexual relationship.

III.  No Double Jeopardy Violation 








Count One of the indictment alleged that
Davenport intentionally or knowingly inserted his penis into A.S.=s sexual
organ on or about February 7, 2004. 
Count Two of the indictment alleged that Davenport intentionally or
knowingly caused A.S.=s sexual organ to contact his
sexual organ on or about February 7, 2004. 
The two counts were submitted to the jury with instructions that the
State was not bound to prove the exact date alleged in the indictment but could
prove that the offenses occurred at any time prior to the presentment of the
indictment and within ten years of the filing of the indictment.  The jury convicted Davenport of both counts
in the indictment.  

In his first point, Davenport contends that his
conviction for both counts of aggravated sexual assault of a child resulted in
the imposition of multiple punishments for the same offense in violation of the
prohibition against double jeopardy.  The
State contends that Davenport failed to preserve this argument by not raising
it at trial and that, in the alternative, there is no double jeopardy violation
on the face of the record.    








Before we reach the double jeopardy issue raised,
we note that Davenport did not make a request, objection, or motion raising his
double jeopardy complaint to the trial court. 
Although generally this failure to preserve error would preclude us from
considering the alleged error, a double jeopardy claim may be raised for the
first time on appeal, however, when (1) the undisputed facts show the double
jeopardy violation is clearly apparent on the face of the record and (2) the
enforcement of the usual rule of procedural default serves no legitimate State
purpose.  Gonzalez v. State, 8
S.W.3d 640, 642-43 (Tex. Crim. App. 2000); Murray v. State, 24 S.W.3d
881, 888-89 (Tex. App.CWaco 2000, pet. ref=d).  Here, because we have a complete record, Ait can
be determined from undisputed facts clearly apparent on the face of the record@ whether
there has been a jeopardy violation.  See
Murray, 24 S.W.3d at 889.      The
Double Jeopardy Clause protects against a second prosecution for the same
offense following a conviction, a second prosecution for the same offense
following an acquittal, and multiple punishments for the same offense. U.S. Const. amend. V; Illinois v.
Vitale, 447 U.S. 410, 415, 100 S. Ct. 2260, 2264 (1980); Lopez v. State,
108 S.W.3d 293, 295-96 (Tex. Crim. App. 2003). 
Davenport=s double jeopardy claim
implicates the third, multiple punishments category.  See Barnes v. State, 165 S.W.3d 75, 87
(Tex. App.CAustin 2005, no pet.).








A person who commits more than one sexual assault
against the same complainant may be convicted and punished for each separate
act, even if the acts were committed in close temporal proximity.  Vick v. State, 991 S.W.2d 830, 833 (Tex.
Crim. App. 1999).  The statutes do not, however,
authorize A>stop‑action=
prosecutions.@ 
Patterson v. State, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004).  That is, a defendant cannot be convicted for
a completed act of sexual assault and also for conduct that is demonstrably
part of the commission of the completed act.  Id. 
Thus, penile contact with genitals in the course of penile penetration
is subsumed in a conviction for the penetration.  Id.; see Barnes, 165 S.W.3d at
87-88 (holding that convictions for sexual assault by penetration and by
genital-to-genital contact based on single act of penetration constituted
double jeopardy).  








Here, the record demonstrates that Davenport had
sexual intercourse with A.S. Aon a
regular basis,@ beginning in the summer of 2002
and continuing until the early morning hours of February 8, 2004.  It is well settled that where a charging
instrument alleges the commission of an offense Aon or about@ a given date, the
State may prove a date other than the one alleged in the indictment, as long as
the date is prior to the presentation of the indictment and not so remote that
prosecution is barred by the statue of limitations.[3]  See Sledge v. State, 953
S.W.2d 253, 256 (Tex. Crim. App. 1997). 
A.S.=s testimony described separate
acts that supported each charge and that occurred prior to the presentation of
the indictment and within the applicable statute of limitations period.  See Cabral v. State, 170 S.W.3d 761,
764‑65 (Tex. App.CFort Worth 2005, pet. ref=d)
(holding that two separate and distinct incidents of abuse that occurred on
different occasions supported each charge in indictment).  Therefore, we hold that Davenport=s
conviction for aggravated sexual assault by penetration and for aggravated
sexual assault by genital-to-genital contact did not violate double
jeopardy.  See id.  Consequently, we overrule Davenport=s first
issue.

IV.  Expert Testimony Properly Admitted 

During the punishment stage of trial, Davenport
called Mary Jo Gutierrez to testify.  She
testified that she worked for Community Supervisions and Corrections and that
she was the officer in charge of probation for the trial court.  She testified about probation, sex offender
registration, and what conditions would be necessary for a sex offender to be
placed on probation.  On
cross-examination, the State began questioning Gutierrez about the process of Agrooming.@  The following exchange took place:

[STATE:]  What is grooming?

 

[GUTIERREZ:]  Grooming is a
behavior that takes place between the offender--

 

[DEFENSE COUNSEL:]  I object to
her testifying as to what grooming is and no predicate has been laid for the
psychological theory behind grooming [that the State] refers to.

 

[THE COURT:]  All right.  I=m going to overrule it. She is my chief and also,
before she was my chief, she was -- also had a sex offender caseload, so I
think she has got enough -- 

 








Davenport then asked for a running objection to Gutierrez=s Agrooming@
testimony, and the trial court granted it. 
The State went on to question Gutierrez on her background and training
in supervising sex offenders.  Gutierrez
testified that of the fifteen years that she has worked for the probation
department, she spent five years working as a specialized sex offender caseload
supervisor for the trial court.  During
that time, she participated in extensive training on how to supervise sex
offenders. She then explained that grooming is Aa
behavior that takes place with the offender and the victim, where over a period
of time, the perpetrator will spend extra time, pay special attention, make the
child feel special.@ 
Gutierrez testified that Davenport=s
teaching A.S. how to untie herself was his way of grooming A.S. to get her to
trust him.  

A.  Trial
Court=s Comment 

In his second point, Davenport argues that the
trial court abused its discretion by making unsolicited comments on the weight
of Gutierrez=s testimony.  Specifically, Davenport argues that the court
Aactually
supplied testimony as to the character and credibility of the [weight of the
evidence]@ when it stated that Gutierrez
worked with the sex offender caseload for the court.  The State contends that Davenport failed to
preserve this complaint for appeal.   








To preserve error for appellate review, a
defendant must make a timely 








objection.  Tex. R. App. P. 33.1(a)(1); see
Rabago v. State, 75 S.W.3d 561, 562 (Tex. App.CSan
Antonio 2002, pet. ref=d).  However, if the error is fundamental, the
lack of an objection will not waive the error.  Blue v. State, 41 S.W.3d 129, 132‑33
(Tex. Crim. App. 2000) (plurality op.); see Tex. R. Evid. 103(d). 
As strange as it may seem to require an objection to comments by the
trial court, in Blue, a majority of the court of criminal appealsCin
a  plurality and in concurring opinionsCupheld
the general rule that error in a trial court=s
comments to the jury is waived absent a timely objection.  41 S.W.3d at 133 (plurality op.) (AThis
case is highly unique and litigants should not view this holding as an
invitation to appeal without making proper, timely objections.@), at
134 (Mansfield, J. concurring) (same), at 139 (Keasler, J. concurring)
(same).  The plurality opinion in Blue
went on to hold, however, that the trial court=s
comments explaining to the jury that the defendant attempted to make a plea
bargain with the State and that the trial court would have preferred a guilty
plea A>vitiated
the presumption of innocence=@ before
the venire and constituted fundamental error. 
41 S.W.3d at 133.  Such
fundamental error, the court of criminal appeals held, did not require
preservation by objection.[4]  41 S.W.3d at 133. 








Here, Davenport did not object to the complained
of comment by the trial court.[5]  Consequently, we examine whether the alleged
error could be considered fundamental, like the trial court=s
comments in Blue.  Unlike in Blue,
the trial court=s comment in the instant case
did not taint Davenport=s presumption of innocence in
front of the jury; in fact, the trial court=s
comment was made during the punishment stage, after the jury had already found
him guilty.  Cf. id. at 132.  After the trial court made this comment,
Gutierrez went on to testify about her expertise, including the fact that she
has worked with the sex offender caseload for the trial courtCthe same
fact that the trial court mentioned. 
Thus, here, the trial court=s
comment did not bear on the presumption of innocence or vitiate the
impartiality of the jury.  See Jasper
v. State, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001).  Because Davenport did not object to the trial
court=s
comment and because the alleged error was not fundamental, any error is
forfeited.  See Tex. R. App. P. 33.1(a)(1); Rabago,
75 S.W.3d at 562.  Consequently, we
overrule his second point.

B. 
Proper Testimony  

In his third point, Davenport contends that the
trial court abused its discretion by overruling his objection to Gutierrez=s
testimony because she was not qualified to render an expert opinion about the
process of Agrooming.@

The burden of establishing a witness=s
qualifications lies with the party offering the testimony.  Matson v. State, 819 S.W.2d 839, 851
(Tex. Crim. App. 1991).  The question of
whether a witness offered as an expert possesses the required qualifications
rests largely in the trial court=s
discretion.  Wyatt v. State, 23
S.W.3d 18, 27 (Tex. Crim. App. 2000); see Tex. R. Evid. 702. 
Absent an abuse of discretion, the trial court=s
decision to admit or exclude testimony will not be disturbed.  Wyatt, 23 S.W.3d at 27.








Rule 702 states, AIf
scientific, technical, or other specialized knowledge will assist the trier of
fact to understand the evidence or to determine a fact in issue, a witness
qualified as an expert by knowledge, skill, experience, training, or education may
testify thereto in the form of an opinion or otherwise.@  Tex.
R. Evid. 702.  No rigid formula
exists for determining whether a particular witness is qualified to testify as
an expert.  Harnett v. State, 38
S.W.3d 650, 658 (Tex. App.CAustin
2000, pet. ref=d).  The rule itself provides that the requisite
expertise may be acquired through knowledge, skill, experience, training, or
education.  Id.  








Here, Gutierrez testified that she has worked for
the probation department for fifteen years and that her job is to Akeep an
eye on@ people
on probation. Of those fifteen years, she spent five of them as a specialized
sex offender caseload supervisor for the trial court, during which she
participated in eighty hours of training each year on how to supervise sex
offenders and attended sex offender treatment with the sex offenders who were
on probation.  The record demonstrates
that, based on Gutierrez=s extensive background,
experience, and training in the area of sex offenders, the trial court could
have reasonably concluded that she was qualified to testify as an expert on the
process of grooming.  See Hernandez v.
State, 53 S.W.3d 742, 751 (Tex. App.CHouston
[1st Dist.] 2001, pet. ref=d)
(stating that experience alone may provide a sufficient basis for an expert=s
testimony); Hardin v. State, 20 S.W.3d 84, 92 (Tex. App.CTexarkana
2000, pet. ref=d) (holding expert=s twenty
years=
experience investigating and supervising sex offenders and her extensive and
continuous training qualified her to testify as an expert on the issue of
whether a convicted sex offender posed a continuing threat to society); see
also Nenno v. State, 970 S.W.2d 549, 562 (Tex. Crim. App. 1998) (stating
that through interviews, case studies, and statistical research, person may
acquire, as result of such experience, superior knowledge concerning behavior
of sexual offenders), overruled on other grounds by State v. Terrazas,
4 S.W.3d 720, 272 (Tex. Crim. App. 1999). 
Therefore, we hold that the trial court did not abuse its discretion in
allowing Thompson to testify as an expert regarding the process of Agrooming.@  See Wyatt, 23 S.W.3d at 27-28.  We overrule Davenport=s third
point.

V.  Proper Admission of Evidence








In his fourth point, Davenport contends that the
trial court abused its discretion by admitting evidence of Davenport=s
extraneous offenses during the punishment stage of trial because the State
failed to give notice of its intent to introduce that evidence.  Prior to trial, Davenport filed a motion
entitled, ADefendant=s Motion
for Notice of State=s Intention to Use Evidence of
Extraneous Offenses at Trial.@  The trial court neither granted nor denied
his motion, and the State did not provide the requested notice.  During the punishment stage of trial, the
State introduced evidence of drug paraphernalia and items containing a white
powdery residue found in Davenport=s home
pursuant to a search warrant.  Davenport
objected that he did not receive notice of the State=s intent
to produce this extraneous offense evidence.      Texas
Code of Criminal Procedure article 37.07, section 3(g) and Texas Rule of
Evidence 404(b) require that the State, upon timely request by the defense,
provide notice to the defense of its intent to introduce evidence of extraneous
offenses.  Tex. Code Crim. Proc. Ann. art. 37.07, ' 3(g)
(Vernon Supp. 2005); Tex. R. Evid. 404(b).  However, the notice provision of art. 37.07
is not triggered when the defendant directs his request for notice to the
court, not to the State.  See Mitchell
v. State, 982 S.W.2d 425, 427 (Tex. Crim. App. 1998). 

Here, the document relied upon by Davenport as
requesting the State to provide article 37.07, section 3(g) notice to him is a
motion asking the trial court to enter an order that orders the State=s
attorney to give reasonable pre-trial notice of the State=s intent
to use evidence of other crimes, wrongs, or bad acts.  Although Davenport served this motion on the
State, the court of criminal appeals in Mitchell held that service on
the State of a motion requesting the trial court to order the State to give
notice was insufficient to trigger the State=s duty
to provide notice under article 37.07, section 3(g).  Id. at 426‑27 (Awe hold
that when a document seeks trial court action, it cannot also serve as a
request for notice triggering the State's duty under Article 37.07, ' 3(g)@).  Thus, we hold that the trial court did not
err in admitting extraneous offense evidence over Davenport=s
objection on this basis.  We overrule
Davenport=s fourth point.








VI.  Proper Jury Argument

In his fifth point, Davenport contends that the
trial court erred by overruling his objection to the State=s
improper jury argument during the punishment stage of trial.  During closing argument, the State argued
that Afrom
this evidence that you have seen, you can almost guarantee and place a bet that
when [Davenport] gets out one day, he is going to be calling on [A.S.].@  Davenport objected that the comment called
for Aspeculations
outside the record.@ 
The trial court overruled his objection and stated, AThis is
jury argument.  This is not
evidence.  The jury has already heard the
evidence.@       To
be permissible, the State=s jury argument must fall within
one of the following four general areas: 
(1) summation of the evidence; (2) reasonable deduction from the
evidence; (3) answer to argument of opposing counsel; or (4) plea for law
enforcement.  Felder v. State, 848
S.W.2d 85, 94-95 (Tex. Crim. App. 1992), cert. denied, 510 U.S. 829
(1993); Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim. App.
1973).  








One permissible area of jury argument is the
making of reasonable deductions from the evidence.  Gaddis v. State, 753 S.W.2d 396, 398
(Tex. Crim. App. 1988).  Counsel is
allowed wide latitude in drawing inferences from the evidence, so long as the
inferences drawn are reasonable, fair, legitimate, and offered in good
faith.  Id.  Additionally, requesting the jury to harshly
punish a defendant to prevent him from Adoing
the same thing@ in the future is a proper plea
for law enforcement. See Kirkpatrick v. State, 515 S.W.2d 289, 293 (Tex.
Crim. App. 1974); Asay v. State, 456 S.W.2d 903, 905‑06 (Tex.
Crim. App. 1970). 

Here, the jury had already heard evidence that
Davenport spent more than two years grooming A.S., that he told her he loved
her and wanted to marry her, and that he wanted to build a house together and
raise their daughter together.  Also, as
in Kirkpatrick and Asay, the State merely was asking the jurors
to punish Davenport in a way that would prevent him from doing the same thing
in the future.  See Kilpatrick,
515 S.W.2d at 293; Asay, 456 S.W.2d at 905‑06.  Immediately before making this statement, the
State argued that Davenport should be sent to prison, not placed on probation,
so that Awe don=t have
to worry about him.  Or [A.S.] doesn=t have
to worry about him.@ 
Thus, we hold that the complained of argument constituted a reasonable
deduction from the evidence and a proper plea for law enforcement.  See Felder, 848 S.W.2d at 94-95.  We hold that the trial court did not err by
overruling Davenport=s objection to the State=s jury
argument, and we overrule Davenport=s fifth
point.








VII.  Conclusion

Having overruled Davenport=s five
points, we affirm the trial court=s
judgment.

PER
CURIAM

 

PANEL F:    WALKER, HOLMAN, and GARDNER, JJ.

 

GARDNER, J. concurs
without opinion.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED: June 15, 2006

 











[1]See Tex. R. App. P. 47.4.





[2]A.S. testified that Davenport had just finished having
sex with her before Crystal called him. 





[3]The relevant statute of limitations in this case is
ten years from A.S.=s eighteenth birthday. 
See Tex. Code Crim. Proc.
Ann. art. 12.01(5) (Vernon Supp. 2005).





[4]Because there is no majority opinion in Blue,
it is not binding precedent. See Pearson v. State, 994 S.W.2d 176, 177
n.3 (Tex. Crim. App. 1999).





[5]Davenport argues that he did object to the trial court=s
comment, but it is clear from the record that he objected to Gutierrez=s
testimony, not to the trial court=s comment.  The
complained of statement was made by the court immediately after Davenport
objected to Gutierrez=s testimony. 
Davenport then requested a running objection for the record, Aso [he
would not] have to keep objecting to all of the questions.@  He made no other objections at that time.